JOHN BANCROFT, JR., Respondent, *v.* FRANCES H. BANCROFT, Appellant.

Argued April 21, 1942; decided June 18, 1942.

*Horace S. Manges* for appellant. The mere promise of the husband is not security for the performance of his own obligation. (*Equitable Industrial Loan Society, Inc.,* v. *Kelly,* 124 Conn. 346; *Storm* v. *Waddell,* 2 Sandf. Ch. 494; *Matter of Bernard,* 177 Misc. Rep. 712.) The bond herein necessarily violates either section 154 of the Civil Practice Act or rule 25 of the Rules of Civil Practice. (*Genauer* v. *Genauer,* 134 Misc. Rep. 594.)

*Neil P. Cullom* and *Robert H. Mulreany* for respondent. The statute does not specify the form or amount of the security to be furnished; those matters are left entirely to the discretion of the court at Special Term and that discretion was properly exercised in view of the circumstances. (*Boyd* v. *Boyd,* 252 N. Y. 422; *Woodbridge* v. *First Nat. Bank,* 166 N. Y. 238; *People ex rel. Toms* v. *Board of Supervisors of Erie County,* 199 N. Y. 150; *Matter of Martin,* 255 N. Y. 359; *Matter of Loose,* 167 Misc. Rep. 764; *Ambruster* v. *Ambruster,* 170 Misc. Rep. 387; *Rostacher* v. *Rostacher,* 172 Misc. Rep. 86; *Cohen* v. *Cohen,* 262 App. Div. 765; *Frankel* v. *Frankel,* 262 App. Div. 770.)

FINCH, J. The special guardian appeals on behalf of defendant, a mental incompetent, from such part of the judgment of annulment as fixes the security to be provided by plaintiff husband for the care and maintenance of defendant. The security fixed

at Trial Term was approved upon appeal to the Appellate Division, with two justices dissenting.

Plaintiff, a non-resident, and defendant were married in 1915. Defendant was fifty-two years of age at the time of the trial. One of the two daughters is now of age and the other is in her twentieth year. In January, 1929, defendant was adjudged insane and is now in a private sanitarium. The trial court found that her condition is such that she should continue to receive care in this private institution for the rest of her life. At the present time defendant is maintained by the income from a trust fund established under the will of her deceased mother. This will provides for one-half of the estate to be held by trustees in trust for the use of defendant. If the income should prove insufficient, the principal may be invaded. The will also provides, however, that the whole or any part of the trust income or principal may, in the discretion of the trustees, be diverted from defendant's use and applied to the support and education of the two children of defendant and plaintiff. The average annual cost of the maintenance of defendant is approximately $4,200. During each of the five years preceding the bringing of this action, the income of the trust has been in excess of that sum. Therefore, although plaintiff is a person of substantial means, having a net worth of over $250,000, he has not heretofore had to bear any of the expenses of maintaining his wife in the sanitarium.

The judgment of the trial court annulled the marriage of plaintiff to defendant on the ground of incurable insanity. It also made provision for payment by plaintiff of the expenses for the care and maintenance of defendant, should the income of defendant from the trust prove insufficient for that purpose. As security for the fulfilment of this obligation by plaintiff, it was:

" ORDERED, ADJUDGED AND DECREED that the plaintiff shall file a personal bond in the sum of $20,000, as security for the payment by the plaintiff of any sums that may be necessary for the support and maintenance of the defendant during her life and that upon the death of the defendant, should said death antedate the death of the plaintiff, said bond shall be cancelled and returned to the plaintiff, his administrator and/or executors; and it is further

"ORDERED, ADJUDGED AND DECREED that the said bond shall be filed and recorded in the office of the Clerk of the County of New York and that a certified copy thereof be filed with the Department of Mental Hygiene at its Albany office."

From the above portion of the judgment defendant through her special guardian appealed to the Appellate Division and later to this court.

Subdivision 5 of section 7 of the Domestic Relations Law (Cons. Laws, ch. 14) compels security to be given and approved at the time of annulment in the following manner:

"§ 7. Voidable marriages. A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: * * *

"5. Has been incurably insane for a period of five years or more; provided, however, that if the marriage be annulled on the ground of the insanity of the wife, the court, before rendering judgment, must exact security, to be approved by a judge of the court, for her suitable care and maintenance during life and shall order the filing and recording of the instrument creating such security in the office of the clerk of the county in which the action is brought and the filing of a certified copy thereof with the department of mental hygiene at its Albany office * * *."

Previous to 1928 a marriage could not be voided for insanity. (*Hoadley* v. *Hoadley*, 244 N. Y. 424.) This decision suggested the enactment of the above statute. The statute is intended to afford relief to the party who is sane and at the same time to require adequate security not only for the care and maintenance of the insane spouse but also to protect the state so that the woman shall not thereafter become a public charge.

The only question raised by this appeal is whether the mere written promise of plaintiff constitutes "security" in the sense contemplated by the statute.

Used in ordinary parlance, it is not too much to say that in a case where it is not contemplated that collateral be deposited, the implication of the word "secured" is that the financial aid of a third party must be obtained. (*Storm* v. *Waddell*, 2 Sandf. Ch. 494, 506; Bouvier's Law Dictionary, [Baldwin's Century Edition], pp. 1097, 1098.) In the case at bar the only security exacted by the

court at Special Term was the mere promise of defendant's husband. In other words, the court merely required plaintiff to make a written acknowledgment of what he was already legally obligated to do and what the non-security portion of the judgment bound him to do. In this non-security portion of the judgment the court had already decreed that plaintiff should care for and maintain defendant during her lifetime. Practically speaking, if the intent of the statute were only to require the naked promise of the husband to support his wife, the provision therein that the court, before rendering judgment, must exact security to be approved by the court, would be without meaning, since the mere promise of the husband cannot render more secure and more certain of performance the solemn obligation already imposed on him by law. That the Legislature used the term " security " which has a settled legal meaning and further provided that the security, when approved, must be filed and recorded in the office of the clerk of the county in which the action is brought and a certified copy filed with the Department of Mental Hygiene at Albany, would seem to indicate clearly that the Legislature had in mind an instrument of the general character provided for by analogous provisions of law.

For instance, section 154 of the Civil Practice Act, entitled " security for infant or incompetent," reads in part as follows: " Where in the course of an action or proceeding security shall be required for protecting the interest of an infant, lunatic, idiot * * *, it shall be in the form of a bond of an approved surety company, or the bond of individuals * * * and approved as to form and the sufficiency of the sureties by the court * * *."

Rule 25 of the Rules of Civil Practice is another illustration of what the Legislature means by the term " security." Subdivision 4 thereof provides that a bond or undertaking, when not furnished by a fidelity or surety company, must be accompanied by the affidavit of the individual who executes it, stating that he is a resident of and a householder or a freeholder within the State, and is a person of the prescribed worth.

We do not mean to say that the form and requisites of the security to be furnished in the case at bar are governed either by section 154 or by rule 25. So to hold would circumscribe the discretion of the trial judge in a manner not warranted by the language

either of subdivision 5 of section 7 of the Domestic Relations Law or of section 1140-a of the Civil Practice Act, by which latter section the court is given a continuing supervision over the parties. All that we decide is that the mere promise of a husband does not constitute " security " within the meaning of the statute.

The determination of the amount of security rests within the discretion of the court at Special Term, to be exercised in accordance with the evidence in a particular case, subject only to the limitation that the security exacted must be fit and suitable in accordance with such evidence.

The judgment of the Appellate Division and that of the Trial Term, so far as appealed from to the Appellate Division, should be reversed and the matter remitted to the trial court to fix security in accordance with this opinion, with costs in all courts to the defendant-appellant.

LOUGHRAN, LEWIS, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., and RIPPEY, J., dissent.

Judgment accordingly.