In the Matter of the Accounting of MILDRED B. WAMPFLER, as Executrix of JOHN H. WAMPFLER, Deceased.

Surrogate's Court, Jefferson County, August 19, 1953.

*E. Ralph Gosier* for executrix, petitioner.

*Charles J. Calkins,* special guardian.

*Nathaniel L. Goldstein, Attorney-General (John F. Hmiel* of counsel), for Department of Mental Hygiene.

WRIGHT, S. Decedent was married in 1938 to Leona Scovill Wampfler who later became incompetent and was committed to the St. Lawrence State Hospital where she still is a patient. On January 15, 1947, decedent obtained a decree of annulment of his marriage to Leona Scovill Wampfler under the provisions of subdivision 5 of section 7 of the Domestic Relations Law on the ground that his wife had been incurably insane for five years or more. Decedent remarried and left a will making the second wife the beneficiary of his estate.

The question here raised is to what extent, if any, the decree of judicial settlement of decedent's estate should make provision for future payments for the care and maintenance of Leona Scovill Wampfler. At the time the annulment decree was granted the statute read: " If the marriage be annulled on the ground of the insanity of the wife, the court, before entering judgment, must exact security, to be approved by a judge of the court, for her suitable care and maintenance during life and shall order the filing and recording of the instrument creating such security in the office of the clerk of the county in which the action is brought and the filing of a certified copy thereof with the department of mental hygiene at its Albany office ".

The decree recites " and the security required by the court in the sum of Five Hundred Dollars ($500.00), having been duly approved and filed ".

The conclusions of law read: " 1. That the plaintiff is entitled to an interlocutory judgment, annulling the marriage between

the plaintiff and the defendant and declaring the same void, such judgment to become final three months after the date of entry thereof, unless the court in the meantime should otherwise order; all upon the condition, however, that the plaintiff give security in the amount of Five Hundred Dollars ($500.00), to be approved by a judge of this court, for the suitable care and maintenance of the defendant during her life.

The decree recites the giving of such a bond but is otherwise silent as to directions for the payment of maintenance of the insane wife whose marriage was annulled. The bond reads:

"KNOW ALL MEN BY THESE PRESENTS, that I, John H. Wampfler, of 1215 Academy Street, City of Watertown, County of Jefferson, New York, as principal and United States Fidelity and Guaranty Company of Baltimore, Maryland, as surety, are held and firmly bound unto the People of the State of New York in the sum of Five Hundred Dollars ($500.00), lawful money of the United States of America, jointly and severally, by these presents, for which payment well and truly to be made, we do hereby bind ourselves and our heirs, executors and administrators.

" SEALED WITH OUR SEALS. Dated this 16th day of January, 1947.

" THE CONDITION OF THIS OBLIGATION is such that if the above bounden John H. Wampfler, shall well and truly cause to be paid the sum of Thirty Dollars ($30.00), or such other sum as may be necessary, each and every month for the suitable care and maintenance of one Leona Scovill Wampfler, for and during the term of her life, such payment to be to the St. Lawrence State Hospital of Ogdensburg, New York, or to such other person or persons as may have the legal custody of said Leona Scovill Wampfler; then and in that event, this obligation to be void, otherwise it is to remain in full force and effect.

JOHN H. WAMPFLER (L. S.)
UNITED STATES FIDELITY AND GUARANTY COMPANY (L. S.)

FRANK L. CUBLEY
Its Attorney in Fact "

The difficulty here arises from the apparent inadequacy of the bond given. It is claimed that the limit of the estate's liability is $500, the amount of the bond. "The statute is intended to afford relief to the party who is sane and at the same time to require adequate security not only for the care and maintenance of the insane spouse but also to protect the state so that the woman shall not thereafter become a public charge. * * *

Practically speaking, if the intent of the statute were only to require the naked promise of the husband to support his wife, the provision therein that the court, before rendering judgment, must exact security to be approved by the court, would be without meaning, since the mere promise of the husband cannot render more secure or more certain of performance the solemn obligation already imposed on him by law." (*Bancroft* v. *Bancroft,* 288 N. Y. 323, 326–327.) True, in the *Bancroft* case the court was considering the nature of the security, but the court was considering the intent of the statute. Certainly, if it were not the intent that the obligation should continue to exist, the provision for requiring security would be meaningless. The requirement for security presupposes an obligation.

Prior to the adoption of this statute no remedy was provided for either of the parties to a marriage in the event that the other became incurably insane.

In *Stevens* v. *Peoples Bank of Hamburg* (157 Misc. 77) the question was raised as to whether the words " for * * * life " limited liability to the life of the husband should he be the first to die. The court said (p. 79) : " It is perfectly obvious that the words ' for her suitable care and maintenance during life ' apply to and mean the life of the wife and that it would be a distortion of the language of the statute to hold that the meaning of said phrase was during the joint lives of the husband and wife. In construing the language of this statute it must be remembered that the remedy afforded to the husband is rather a drastic one when it is considered that a wife who, had she remained sane, had certain statutory rights given her in the event that she survived her husband. The statute, while giving relief to the husband under such unfortunate circumstances, clearly, from the language thereof, did not intend that the security required to be given should continue only during the life of the husband. It would seem under all of the circumstances that it was the intention of the statute to provide for the care and maintenance of the wife during her life in lieu of her right to inherit as a surviving spouse, and to hold otherwise, particularly in this case where the bond states ' her life,' would be a miscarriage of justice."

As I interpret this statute its intent is to require continuing support of the insane former wife during her life as a condition for granting an annulment of the marriage. The giving of the bond is simply to insure such support. And as I see it, the fact that the bond was in a sum wholly inadequate to protect the wife, is immaterial. Just as the restriction in the statute as to

remarriage in divorce actions is controlling whether or not it is set forth in the decree, the requirement to support the insane wife during her life is controlling whether or not it is set forth in the decree and regardless of the amount of the bond, and is an express condition on the granting of the annulment.

Justice SHIENTAG, in *Rostacher* v. *Rostacher* (172 Misc. 86) outlined the duties of the special guardian for the defendant in an annulment action on the ground of insanity, which, if they had been followed here, would have doubtlessly resulted in more adequate protection to the defendant for future support. His outline is recommended reading for special guardians in such instances. But such failure does not avoid the statutory intent.

Provision should be made in the final decree to make certain that support will be provided during her life to Leona Scovill Wampfler from the decedent's estate.

Present proposed decree on August 27th at 2:00 P. M.