ISIDORE ROSTACHER, Plaintiff, *v.* HANNA ROSTACHER, Defendant.

Supreme Court, Special Term, New York County, June 10, 1939.

*S. Earl Levine,* for the plaintiff.

*Thomas H. Allen,* special guardian for the defendant.

*John J. Bennett, Jr., Attorney-General,* for the State of New York.

SHIENTAG, J. This is an action to annul a marriage on the ground of the subsequent insanity of one of the parties. The action is brought pursuant to an amendment to the Domestic Relations Law which was enacted in 1928 (§ 7, subd. 5).

Prior to that year it was well-settled law in this State that where one of the parties to a marriage was insane at the time it was entered into, the marriage could not be annulled at the suit of the spouse who was sane. Only the insane party or a relative of that person who had an interest to void the marriage could sue to have it annulled.

In *Hoadley* v. *Hoadley* (244 N. Y. 424) this rule was adhered to. In that case CARDOZO, Ch. J., wrote: " Much is said about hardship. Not all of it is of such a nature as to be heeded by the law. The theory of annulment on the ground of insanity is not that the sane spouse has made a bad bargain in getting an insane partner. The theory is that the insane partner to the union has manifested a consent that is unreal for lack of a contracting mind. The hardship might be as great in many of its phases if insanity supervened a month after the marriage or a year. It might be as great if the diseased condition were one of body and not of mind. The law turns a deaf ear to these and like regrets."

Nevertheless, Chief Judge CARDOZO pointed out certain considerations which he said " may suggest an amendment of the statute that will extend the right of action. Good faith can be assured by coupling the extension with appropriate conditions." The following year the Legislature amended the Civil Practice Act by providing in language that might well have been modernized that " Where one of the parties to a marriage was a lunatic at the time of the marriage, an action may also be maintained by the other party at any time during the continuance of the lunacy, provided the plaintiff did not know of the lunacy at the time of the marriage." (Civ. Prac. Act, § 1137, as amd. by Laws of 1928, chap. 83.)

It had never been contended that the law afforded relief where one of the parties to a marriage became insane subsequent thereto. Nevertheless, the Legislature not only provided for relief to a spouse where the other party to the marriage was insane at the time it was entered into, but in the same year it extended this relief, under most stringent conditions, however, to cases where the insanity arose subsequent to the marriage. This was a most drastic change in the law.

The new statute provided that a marriage may be annulled at the instance of a spouse on proof of the insanity of the other contracting party where that party " has been incurably insane for a period of five years or more." Certain terms and conditions are set forth in the section, to which reference will be made later. (Dom. Rel. Law, § 7, subd. 5, added by Laws of 1928, chap. 589.)

Many such actions have been instituted in our courts and there has been a tendency by the parties concerned to treat them as *pro forma* proceedings. There is, however, no civil action in which the court is called upon to exercise greater care to preserve the rights of the defendant than in this type of proceeding. Stricken by mental disease, deprived of reason and unable to act for himself, the insane ward of the court is protected by the appointment of a special guardian to represent his interests. The duties of the special guardian are more than routine. Though he may often be inadequately compensated, he is called upon to conduct the most searching investigation and to resort to every measure that can possibly be taken to protect and safeguard his ward. The first step that such special guardian should take is to ascertain immediately the nearest relatives of the insane party, advise them of the action pending, explain the law to them, give them an opportunity to retain counsel of their own choice if they so desire, ascertain if they have any information relating to the subject-matter of the action, and inform them of the date of the trial so

that they may attend and present their views to the presiding justice.

The special guardian should visit the hospital, State or private, in which the insane person is a patient, examine the hospital records carefully, confer with the doctors in charge of the case, talk to the insane person in the endeavor to ascertain his mental condition so far as a layman can do so, and make some attempt to explain to the insane party the nature of the action which is being brought. The special guardian should be in a position to report to the court fully at the trial concerning the investigation that he made and what he found. The law provides that if the marriage is annulled on the ground of the insanity of the wife the court, before rendering judgment, must exact security to be approved by a judge of the court for her suitable care and maintenance during life. A special guardian is under a duty, therefore, to acquaint himself fully concerning the financial status of the plaintiff and the sum that will be required for the adequate support and maintenance of the insane wife. He is also required to pass on the sufficiency of the bond which must be posted. This should be done after consultation with the Deputy Attorney-General in charge of these matters and after conferring with the relatives of the defendant. It is, of course, the duty of the special guardian to appear at the trial, to act as attorney for his ward, and to see that the latter's legal rights are completely preserved.

The section we are considering also provides that judgment annulling a marriage on the ground of subsequent insanity shall not be rendered " until, in addition to any other proofs in the case a thorough examination of the alleged insane party shall have been made by three physicians who are recognized authorities on mental diseases, to be appointed by the court, all of whom shall have agreed that such party is incurably insane and so reported to the court. When the person alleged to be incurably insane is confined in a State hospital for the insane, one, and one only, of the physicians so appointed shall be a member of the resident medical staff of such hospital designated by the superintendent thereof. If the alleged incurably insane person is not confined in a State hospital for the insane, one of the examining physicians named in pursuance to this section shall be the superintendent of a state hospital for the insane." (Dom. Rel. Law, § 7, subd. 5.)

It is to be emphasized that the statute requires the examination of the alleged insane party to be made by three physicians who are recognized authorities on mental diseases. It should be noted, moreover, that not alone must the three physicians mentioned agree as the result of examination and so report to the court, that

the defendant is incurably insane, but competent proof must be presented at the trial that the defendant has been incurably insane for a period of five years or more. In a proper case the court will direct that the incompetent be produced at the trial or will take testimony at the hospital in which the incompetent is a patient. At the trial the plaintiff is required to offer the most comprehensive and convincing testimony in support of the allegations of his complaint. In no other civil action known to the law is so high a degree of proof required as in a case of this character. The reasons are obvious. In addition to other proof which may be necessary there should be available at the trial for examination by the court the complete hospital records of the patient. Of the three physicians designated by the court to make the examination at least two shall be required to attend the trial and give testimony, one of whom shall be a member of the medical staff of a State hospital. It has been suggested that to require such testimony in court would be to subject the parties seeking relief to unnecessary expense. There would be expense, but it could hardly be called unnecessary. Experience has shown that in meritorious cases leading members of the medical profession will co-operate with the court and will accept whatever compensation the court deems proper in the light of all the circumstances.

I have outlined rather fully the procedure that should be followed in actions of this kind. It is important to proceed with great caution. Knowledge concerning mental diseases and their cure or alleviation is constantly expanding. Diseases that were thought to be incurable not so many years ago now yield completely to new methods of treatment. The statute under which this action is brought is in derogation of the common law and of the solemn obligations assumed by the parties to a marriage to take each other for better or for worse, in sickness or in health. The Legislature intended to throw around this new and drastic remedy the most complete safeguards. The courts should insist upon a strict compliance with the conditions imposed.

In the case before me the plaintiff has established his right to the relief sought. The findings of fact, conclusions of law and interlocutory judgment which have been served on notice to the special guardian have been signed.