Charles M. Hughes, J.
The above-entitled action was tried before the court without a jury.
The plaintiff brought an action pursuant to the provisions of subdivision 5 of section 7 of the Domestic Relations Law, based upon the alleged incurable insanity of the defendant for a period of five years or more.
The following is a brief history of the proceedings had in this action: The action was commenced in September, 1958 by the service of a copy of the summons and complaint upon the defendant, personally, and further service of copies thereof upon James A. Davidson, Esq., special guardian of the defendant; the Attorney-General of the State of New York, and the Marcy State Hospital, by virtue of an order of this court. The special guardian of the defendant appeared and entered a general denial to the complaint. The Attorney-General of the State of New York appeared in behalf of the Marcy State Hospital. Subsequently, by an order of this court duly made and entered in the Saratoga County Clerk’s office on November 10,1958, this court appointed three qualified physicians to examine the defendant and to report their findings.
*1019 On May 1,1959 the matter was tried before the court, and the plaintiff appeared and the defendant appeared by her special guardian. The examination by the physicians and their report were made a part of the record. Written and oral proof was taken in support of the allegations set forth in the complaint. Findings of fact and conclusions of law were filed and an interlocutory judgment of annulment granted. The interlocutory decree was not entered until July 3, 1959. Prior to the interlocutory decree becoming final, the defendant moved to reopen the proceedings and to obtain an attorney of her own choice and to stay the entry of a final judgment. The interlocutory decree entered herein on July 3, 1959 was vacated and the case was ordered restored to the calendar for the trial of the issues by an order of this court dated February 8, 1960. A verified answer consisting of a general denial to the allegations of the complaint was served by the defendant on the plaintiff on or about February 15, 1960. On March 14 and 15, 1961 the matter was tried before this court.
The proof showed that the defendant had suffered a mental condition and was hospitalized at Mosher Memorial Hospital, Albany, New York in September, 1955 and October, 1956. She was also a patient at the Agnew State Hospital, Agnew, California, from December, 1957 to April, 1958. She was admitted to Marcy State Hospital on November 28, 1956 and was a patient at the Marcy State Hospital when she left for California. On July 21, 1959, subsequent to the entry of the original decree herein, the defendant was placed on £ £ home care ’ ’ treatment from the Marcy State Hospital. Since that time, the defendant has been back to the hospital on only two or three half hour occasions. After being placed on ‘ ‘ home-care ’ ’ treatment, the defendant became employed through her own initiative. The defendant has worked for a concern in Utica, New York, since August, 1959. She has lost no time from work, except for the purpose of this litigation.
The plaintiff called to the stand three psychiatrists who had examined the defendant on various occasions. Dr. H. B. Long-testified that he first examined the defendant on November 6, 1956 in Albany, and then jointly on January 29, 1959 with Dr. Walter A. Osinski and Dr. E. Hilda Goldback. Dr. Osinski testified he first saw the defendant on August 23, 1955 at his Albany office. The last time Dr. Osinski saw the defendant was on January 29, 1959. Dr. Hilda Goldback testified that the last time she examined the defendant was on January 29, 1959. All three psychiatrists testified that the defendant was incurably *1020 insane. Dr. Long, however, stated that he could be wrong in his diagnosis.
Dr. John L. Kemeny, a psychiatrist, testified on behalf of the defendant. He had a one-hour examination of the defendant on January 23, 1960, and he testified that he found no signs of mental illness.
The facts further revealed that the defendant was allowed to move from the confines of “ home care ” to the YWCA in Utica, New York. She is allowed to move freely without any supervision. Her employees with whom she has been associated since August, 1959 testified that they were unaware that the defendant was a patient at the Marcy State Hospital, until the day before the trial.
Subdivision 5 of section 7 of the Domestic Relations Law empowers the court to grant an annulment where the defendant “ [h] as been incurably insane for a period of five years or more ’ ’. Subdivision 5 of this section is in derogation of the common law and must be strictly complied with. (Blauvelt v. Blauvelt, 182 Misc. 618 ; Dauge v. Dauge, 203 Misc. 74 ; Rostacher v. Rostacher, 172 Misc. 86.) Prior to the enactment of subdivision 5, an action to annul a marriage on the ground that one of the parties thereto, at the time of the marriage, was a lunatic and had ever since continued so to be, could not be brought by the same party to the marriage, but could only be maintained on behalf of the lunatic or by the lunatic himself after restoration of a sound mind. (Reed v. Reed, 106 Misc. 85.) ' It is also a general rule that every man is presumed sane until that presumption is overthrown by clear and satisfactory proof. (Banker v. Banker, 63 N. Y. 409 ; Meekins v. Kinsella, 152 App. Div. 32.)
In the case at hand, the earliest medical proof as to the onset of the defendant’s mental condition was August 23, 1955. The plaintiff testified the above-entitled action was commenced in September, 1958, approximately three years later. There was no competent medical proof as to the defendant’s condition prior to August 23,1955 or the period elapsing between January 29,1959 and the date of the trial.
The statute requires that the plaintiff must show that the defendant was incurably insane, not only for a period of five years or more, but, also, at the time the action is tried. The plaintiff here commenced his action three years after the defendant was first given competent medical attention. At the time the action was tried before the court, a period of five years had elapsed. The plaintiff, however, did not move at the close of his case to amend his pleadings to conform to the proof *1021 actually submitted. In any event, a serious question arises as to whether the proof had been of a sufficient degree to establish that the defendant had been incurably insane for a period of five years or more at the time of trial. The three psychiatrists that testified on behalf of the plaintiff had last examined the defendant on January 29, 1959. The time lapse between this examination and the ultimate trial of this action raises a serious question as to the defendant’s condition during the interim period and at the trial itself. This is also borne out by the direct examination of Dr. Holdback, a qualified psychiatrist. Dr. Holdback was asked the question if the defendant had been incurably insane for five or more years prior to January 29, 1959. The response was “ four or five years Not only must the statutory ground of five years be met, but it must further be shown that the incurable insanity existed at the time the action is tried. Any other construction or conclusion would eliminate any significance as to the meaning of the term ‘ ‘ incurable .insanity”. (Devanbagh v. Devanbagh, 5 Paige Ch. 554 ; Anonymous v. Anonymous, 49 N. Y. S. 2d 314.)
In view of the fact that this action was commenced prior to the lapse of five years, and further, that the last examination of the defendant was held by the three psychiatrists approximately 14 months before the trial of the action, this court is of the opinion that the plaintiff has not shown by competent medical proof that the defendant was incurably insane for a period of five years, and that the said condition existed at the time of trial. The plaintiff’s action, therefore, at this time, must fall, and the complaint is accordingly dismissed.
It should be noted that in an action of this nature, a proper examination should be had during the progress of the trial so that the testimony of the examining medical experts may be received in aid of a proper disposition of the case. (Trovato v. Trovato, 262 App. Div. 276 ; Gore v. Gore, 103 App. Div. 168 ; Goldsmith v. Goldsmith, 279 App. Div. 579.) The court, in arriving at its decision here, is mindful that there is no civil action in which the court is called upon to exercise greater care to preserve the rights of the defendant than in this type of proceeding. (Rostacher v. Rostacher, 172 Misc. 86.)
The defendant is granted counsel fees in the sum of $750 and expenses and disbursements incurred in the defense of the action in the amount of $284.27. The plaintiff’s complaint is dismissed, without prejudice.