Bernard D. Meyer, J.
In this annulment action the panel of physicians appointed pursuant to subdivision 5 of section 7 of the Domestic Belations Law has reported: “We, after joint thorough examination of the said Barbara Weiss, and after consideration of all available information, including hospital records, were not able to determine that the said Barbara Weiss is incurably insane or has been incurably insane for a period of over five years.” Defendant and her special guardian move to dismiss the action; plaintiff, claiming that defendant has suffered a relapse since the panel examined her, cross-moves to have the panel reconvened. The cross motion is supported by the affidavit of one of the panel members, who states:
“ [T]he panel could not reach a determination because the defendant was under thorazine medication, and, if suffering from schizophrenia, paranoid type, was in a period of lucidity, which her past history indicates she enjoys intermittently. *257 “If such period of lucidity should ever cease and overt symptomatology become evident, the panel might then be able to reach a determination.”
The questions presented by these motions are: (1) The meaning of the phrase “incurably insane” as used in the statute, (2) the nature of the proof required by the statute, and (3) the effect to be given the panel report at the present stage of the proceeding.
Testimony taken in connection with hearings concerned with custody and visitation with the two children of the marriage shows that defendant was hospitalized in April, 1953 at West Hill Sanitarium, Biverdale, where she remained for about six weeks during which she received shock treatment; that she was again hospitalized in Lady of Peace Hospital, Louisville, Kentucky, for about two months, and then in August, 1953 was transferred from that hospital to New York Hospital where she remained until April, 1954; that from April, 1954 to March, 1955, she was an outpatient of New York Hospital; that from April, 1955 to June, 1955 she was in the Long Island Home, Amityville; that 'she returned to the Long Island Home in March of 1956, was there for about five weeks, and was then transferred to High Point Hospital, Port Chester, and then to Hillside Hospital from which she was discharged in October, 1956; that from August, 1958 to December, 1958 she was again in the Long Island Home; that in March, 1960 she was admitted to Pilgrim State Hospital from which she was released on convalescent discharge in July, 1960; that during the periods when she was not in the hospital she lived at home with her family and was a patient of various psychiatrists; that the last, Dr. Lehrman, put her on thorazine medication as a result of which he considered her cured. Mrs. Weiss appeared at several of the hearings and testified at one of them, and, in the opinion of the court, was perfectly lucid at that time. Dr. Lehrman testified that she had suffered from schizophrenia, catatonic type. At least one of the hospital records showed a diagnosis of schizophrenia, paranoid type. The medical panel examined defendant on July 29, 1961. The testimony of a neighbor and of a phychiatrist who examined her on August 31 indicate that defendant was in a state of relapse in August, but are not clear as to when the relapse commenced.
I — Definition of “ incurably insane ”
The statute sets forth no definition of the phrase ‘ ‘ incurably insane ”, and section 2 of the Mental Hygiene Law is of no help in that connection, since its definitions are limited by the open *258 ing phrase ‘ ‘ when used in this chapter”. Defendant cites Rostacher v. Rostacher (172 Misc. 86); Blauvelt v. Blauvelt (182 Misc. 618) and Dauge v. Dauge (203 Misc. 74) in support of the argument that the statute is in derogation of the common law and thus to be strictly construed. On the basis of this rule of construction she contends that, in view of the length and quality of her remissions, her illness cannot be considered incurable insanity within the meaning of the statute.
So alien was the concept of divorce without fault that the initial judicial reaction to statutes making postnuptial insanity a ground for divorce was to construe them so strictly as practically to nullify them (see annos. 113 A. L. B., 1248, 1254; 24 A. L. B. 2d 873, 877; and see the trial judges’ comments referred to in Wirz v. Wirz, 96 Cal. App. 2d 171). One objection was “ that not only is there absence of fault but renunciation of duty for more misfortune ” (McCurdy, Insanity as a Ground for Annulment or Divorce in English and American Law, 29 Va. L. B. 771, 804; Rostacher v. Rostacher, supra, p. 89). However, the latter objection overlooks the provisions of the statute continuing the obligation of a husband to support his incurably insane wife (Domestic Belations Law, § 7, subd. 5, par. [a]). Further, overly strict construction negates the legislative intent that, provided a husband’s economic duty to his incurably insane wife be taken care of, the sane spouse need not, if his or her spouse be shown to be incurably insane, continue longer than five years to live in marital limbo. To be sure, specific and somewhat unusual proof provisions are, as will hereafter be shown, contained in the statute. Those provisions constitute safeguards against abuse, however, and provide no judicial license to overrule the legislative purpose (Dodrer v. Dodrer, 183 Md. 413; State v. Brown, 213 Ind. 118). Bather the statute is to be given such application as reasonable construction of its language indicates (Wirz v. Wirz, supra; Tipton v. Tipton, 309 Ky. 338).
The word “ insane ” ordinarily implies every degree of the unsoundness of mind (De Gogorza v. Knickerbocker Life Ins. Co., 65 N. Y. 232, 237) including illnesses in which there may be remissions or mitigations (Haviland v. Hayes, 37 N. Y. 25, 33; see Harris v. Harris, 20 Misc 2d 775). Whether in a particular case the illness is incurable is a question of fact to be determined in accordance with the present state of medical knowledge (Tipton v. Tipton, supra; State v. Brown, supra; Freeman v. State Bd. of Med. Examiners, 54 Okla. 531; Austell v. Volunteer State Life Ins. Co., 170 S. C. 439; cf. Rostacher v. *259 Rostacher, supra, p. 89). Schizophrenia is a recognized form of mental disorder. (44 C. J. S., Insane Persons, § 2, pp. 27, 44. See, also, Anonymous v. Anonymous, 123 N. Y. S. 2d 286, 294.) In Harris v. Harris (supra) counsel fee in order to appeal from a judgment of annulment was denied on the ground that reasonable probability of success had not been shown, notwithstanding that the illness involved was dementia praecox, paranoid type, and defendant had been released from the hospital on a writ of habeas corpus. In Cohen v. Cohen (286 App. Div. 1035) the grant of an annulment was affirmed though the record on appeal shows that the strict construction rule of the Rostacher, Dauge and Blauvelt eases (supra) was urged, that the illness involved was schizophrenia, hebephrenic type, and that defendant wife had been admitted to institutions and released four times. In Cohen v. Cohen (289 N. Y. 145) the Court of Appeals upheld denial of a motion to set aside an annulment claimed to have been based on perjury and fraud. Examination of the record shows that diagnosis of dementia praecox of both catatonic and hebephrenic type were made, that during the five years and three months preceding the annulment action defendant wife had been in hospitals several times but had been at home three years and three months of the time, and during the period at home preceding her last hospital admission had nursed her son through a serious illness. Also of interest, notwithstanding the procedural distinction between that case and this, is the fact that defendant’s Court of Appeals briefs in the case argued that incurable insanity necessarily excluded any mental condition amenable to treatment.
Although “ a showing that the patient has not responded to accepted methods of treatment over a period of time” may furnish the basis for a finding of incurability (Lindman and McIntyre, The Mentally Disabled and The Law, p. 201) the cases above outlined make clear that the fact that an illness has responded to treatment does not necessarily establish that it is not incurable. As the Maryland Court of Appeals wrote in Dodrer v. Dodrer (supra, p. 419): “ It is not intended to grant the right of divorce only from those persons who are so violently insane that they have to be incarcerated at all times. The test is not the manifestation of the mental disease. It is permanence and incurability.” The number and nature of remissions from the illness are to be considered by the trier of fact; they do not, however, exclude the illness from the class of incurable insanity as a matter of law.
*260 II — The Quantum of Proof
Section 7 (subd. 5, par. [b]) of the Domestic Relations Law provides in part: ‘1 Judgment annulling a marriage on such ground shall not be rendered until, in addition to any other proofs in the case, a thorough examination of the alleged insane party shall have been made by three physicians who are recognized authorities on mental disease, to be appointed by the court, all of whom shall have agreed that such party is incurably insane and shall have so reported to the court. In such action, the testimony of a physician attached to a state hospital in the department of mental hygiene as to the information which he acquired in attending a patient in a professional capacity at such hospital, shall be taken before a referee appointed by a judge of the court in which such action is pending; provided, however, that any judge of such court at any time in his discretion, notwithstanding such deposition, may order that a subpoena issue for the attendance and examination of such physician upon the trial of the action.” If the panel decision be not unanimous annulment may not be decreed (Blauvelt v. Blauvelt, supra; Bowersock v. Bowersock, 210 Md. 427). But the trier of fact is not bound to make a finding of incurable insanity notwithstanding a unanimous panel report to that effect (Dodrer v. Dodrer, supra; Wirz v. Wirz, supra). The statute expressly provides for other proof.
The provision for other proof and the requirement that the three designated physicians shall have “ agreed” makes clear that it is the individual opinions of these “ recognized authorities on mental disease ”, rather than testimony in absolute terms, upon which any determination of incurable insanity must rest (Wirz v. Wirz, supra; Tipton v. Tipton, supra; Ann. 15 A. L. R. 2d 1135). “No higher degree of proof than well grounded opinion evidence in the light of present day medical knowledge ” is required (Wirz v. Wirz, supra, p. 175) nor is it necessary that the report of the medical panel be phrased in the exact words of the statute (Bowersock v. Bowersock, supra).
In Cohen v. Cohen (286 App. Div. 1035, supra) it was urged that the evidence was insufficient because of the amount of time during the preceding five years defendant had been out of mental institutions and because the panel interview with defendant lasted only 10 minutes. The panel report showed, however, that defendant had remained mute during the panel examination and after 10 minutes had simply walked out of the room. The court concluded (p. 1036) that “the evidence warranted the finding that appellant had been incurably insane for five years.” In Dodrer v. Dodrer (supra) a finding of incurable insanity *261 was made notwithstanding that defendant appeared and testified on the trial. In Bowersock v. Bowersock (supra) denial of a divorce was affirmed when one of the doctors testified that there had been some improvement in defendant’s condition since she had been taking thorazine and that there was a 30% to 50% chance of recovery.
Unanimous agreement of the court-appointed physicians is, thus, a sine qua non, but given such a report the ultimate question of fact is to be determined on the usual basis; i.e., by a preponderance of all of the evidence presented, expert and other.
Ill — Effect of the Panel Report
It will be observed that the quoted language of paragraph (b) of subdivision 5 of section 7 does not detail how the report of the appointed physicians is to be made to the court, nor does it prohibit the calling of all of them as witnesses at the trial, although as a matter of “ public convenience ” (Cohen v. Cohen, 286 App. Div. 1035, 1036) provision is made for taking the testimony of an attending State hospital physician by deposition. In contrast, paragraph (d) of subdivision 5, dealing with actions prosecuted by plaintiff as a poor person, specifically provides that the physician-examiners’ report shall be verified and shall be received in evidence without personal appearance of the examiner, and that if the court deem the testimony of any such examiner necessary, such testimony may be taken by deposition only. True it is that in proceedings under paragraph (b) of subdivision 5, the practice has arisen of the panel filing a written report with the court at or prior to trial, and of at least one physician appearing at the trial (see Rostacher v. Rostacher, supra); but neither is explicitly required by the statute. Further, since the opening sentence of paragraph (b) of subdivision 5 simply states the minimum required before judgment can be entered, it does not limit the number of examinations. The court has discretion to order more than one examination if good cause for so doing is shown.
While cases may arise in which a report filed by a medical panel so clearly excludes the possibility of a finding of incurable insanity for five years as not to justify the ordering of a further examination, the instant report may not be so classified. The statement that the panel members “ were not able to determine ” incurable insanity is not necessarily a statement that it did not then exist or may not have existed for five years; they may have concluded sinrply that the evidence before them was an insufficient basis for the statement of an opinion. The affidavit of one panel member submitted on this cross motion suggests *262 that such is the case. However, unless all three panel members so agree and further agree that further examination during a period of overt symptomatology might furnish the basis for a finding not only of presently incurable insanity, but of a condition existing for at least five years past, there would be no basis for an annulment, and consequently no reason to order a further examination.
The motion to dismiss is denied; the cross motion to reconvene the panel is denied, without prejudice to renewal upon papers including affidavits of all three panel members.