Gilbert TUCKER et al., Plaintiffs,

v.

ARTHUR ANDERSEN & CO., Defendant, Third-Party Plaintiff,

v.

Joseph A. BONURA et al., Third-Party Defendants.

73 Civ. 4259(HFW).

United States District Court, S. D. New York.

June 30, 1980.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant Arthur Andersen & Co.; Peter Fleming, Jr., John E. Sprizzo, Philip M. Chiappone, New York City, of counsel and Wilson & McIlvaine, Chicago, Ill.

Layton & Sherman, New York City, for third-party defendant Meckler; Daniel J. Brooks, Frederick E. Sherman, New York City, of counsel.

## OPINION

WERKER, District Judge.

This action, one of several arising out of the bankruptcy of Bermec Corporation ("Bermec"), was commenced by plaintiffs on their own behalf and on behalf of all members of the class of persons who purchased securities of Bermec between September 26, 1968 and November 1, 1969. This particular case arises out of Bermec's acquisition of Black Watch Farms on or about June 21, 1968. Plaintiffs charge defendant and third-party plaintiff Arthur Andersen & Co. ("Andersen") with violations of the federal securities laws. Andersen impleaded third-party defendants Joseph A. Bonura ("Bonura"), Empire National Bank ("Empire"), Herman L. Meckler ("Meckler") and Jack R. Dick ("Dick").

Meckler moves pursuant to Fed.R.Civ.P. 15(d) and 56(b) for (a) leave to supplement his answer to Andersen's third-party complaint by interposing the affirmative defenses of *res judicata* and collateral estoppel premised on the jury verdict in *State Mutual Life Assurance Company of America v. Arthur Andersen & Co.*, 71 Civ. 4036 (HFW) ("*State Mutual*"); and (b) summary judgment dismissing the third-party com-

plaint. A brief description of the facts necessary for the disposition of the motion presently before the court follows.

### I.

On July 11, 1968, pursuant to an agreement of June 21, 1968, Bermec's subsidiary, Black Watch Farms, Inc. ("Black Watch"), acquired a controlling interest in Black Watch Farms by purchasing the interest of B. W. Farms, Inc., a corporation controlled by third-party defendant Dick. The complaint charges that prior to Black Watch's acquisition, Dick had embezzled more than $3 million from Black Watch Farms and had made certain representations and commitments to Black Watch customers which created potential liabilities not subsequently reflected on the books, records or financial statements of Black Watch or Bermec. Plaintiffs charge Andersen with fraud in connection with its certification of the financial statements of Bermec and Black Watch for the fiscal year ending June 30, 1968. Specifically, the complaint alleges that if Andersen had used proper auditing procedures in preparing the financial statements, it would have uncovered Dick's defalcations. Plaintiffs further assert that because of Andersen's improper auditing procedures, the 1968 financial statements contained misrepresentations and omissions of material facts in that they failed to present fairly the financial position of Bermec or Black Watch and materially overstated the net income of those corporations. It is further alleged that the market price of Bermec stock was artificially inflated as the result of the financial statements certified by defendant and distributed to the shareholders and the general public.

Plaintiffs also claim that by April 1969, Andersen became aware of Dick's embezzlements, but instead of disclosing the inaccuracies of the June 30, 1968 financial statements, Andersen decided to "cover-up" the scheme.

The gravamen of Andersen's third-party claim against Meckler is that Meckler, as chief executive officer and director of Bermec and Black Watch, owed Andersen a duty in connection with Andersen's audit of those corporations to fully disclose all material facts "pertaining to the financial affairs, conditions, and status of Black Watch Farms" and Black Watch. Meckler allegedly breached that duty by "deliberately and knowingly" concealing from Andersen the results of Black Watch's investigation into Dick's defalcations and representations and commitments to customers. Andersen seeks indemnity or contribution from Meckler in the event it is found liable to plaintiffs.

Meckler answered the third-party complaint in September 1974 and now moves to amend that answer to include the affirmative defenses of *res judicata* and collateral estoppel and for summary judgment dismissing Andersen's third-party complaint based on those defenses and premised on the jury verdict in *State Mutual*.[1]

The *State Mutual* action was brought against Andersen by a group of insurance companies for recovery of approximately $10 million loaned by them between 1967 and 1969 to Black Watch. *State Mutual* plaintiffs claimed that Andersen had violated its duties under the federal securities statutes and common law in its auditing of Black Watch's accounts for the fiscal years ending June 30, 1968 and June 30, 1969. Andersen in turn filed a third-party com-

---

1. *State Mutual* was tried before this court in 1977. There four insurers sued Andersen, Empire and Meckler for financial losses incurred in three loan transactions involving Black Watch. Third-party claims and cross-claims involving the present defendants were also asserted. The jury was unable to agree on the question of Andersen's liability, rendered a verdict for plaintiffs against Empire in the sum of $2.7 million plus interest and costs, and found in favor of Meckler on plaintiffs' claims against

him. The Second Circuit, in *State Mutual Assurance Co. v. Arthur Andersen & Co.*, 581 F.2d 1045 (2d Cir. 1978), determined that a retrial with a jury would be required on the issues of Andersen's liability as well as the liability of other parties with respect to the third-party claims and cross-claims that remained unresolved. This court's dismissal of all third-party claims and cross-claims asserted against Meckler was affirmed. No retrial occurred since the parties negotiated a settlement.

plaint against Bonura, Empire, Meckler and Dick. Andersen's claim against Meckler was for non-disclosure of Dick's defalcations and commitments to customers in connection with Andersen's certification of the Bermec and Black Watch consolidated financial statements for the fiscal year ending June 30, 1968. Specifically, Andersen charged Meckler with misrepresentation as to the financial posture of those corporations, and non-disclosure as to contingent liabilities as well as the results of Black Watch's investigation into Dick's alleged improprieties. Brooks Affid. Exh. B. ¶¶ 54, 56. Andersen sought indemnity from Meckler in the event it should be found liable to plaintiffs in that action.

Subsequent to the filing of Andersen's third-party complaint, the *State Mutual* plaintiffs filed a complaint directly against Meckler pursuant to Fed.R.Civ.P. 14(a) charging him with knowing or reckless concealment of and/or misrepresentations with regard to Dick's defalcations and representations to customers. Brooks Affid. Exh. C ¶¶ 24–27, 29–40.

After a seven-month trial of the *State Mutual* action, I instructed the jury that if it found for Meckler on the plaintiffs' claim, it should also find in Meckler's favor on all third-party claims, including those made by Andersen. After twenty-one days of deliberation, the jury returned a unanimous verdict in favor of Meckler against the plaintiffs. The jury was deadlocked 4–2 in favor of liability on the plaintiffs' claims against Andersen which resulted in Andersen's third-party claims against Meckler being left unresolved. Accordingly, judgment was entered dismissing Andersen's third-party complaint against Meckler, and Andersen appealed. The dismissal was affirmed in *State Mutual Life Assurance Company of America v. Arthur Andersen & Co.*, 581 F.2d 1045 (2d Cir. 1978), wherein the Second Circuit found that the "jury's verdict was fully consistent with the dismissal of all claims against Meckler." That holding was an implicit adoption of my reasoning that "if Meckler was not found liable [to plaintiffs], then Meckler could not be found liable to anyone else because the third party responsibility was predicated upon some act having been done which was detrimental to the plaintiff." *Id.* at 1051–52.

## II.

Meckler's motion for leave to supplement his answer by asserting the defenses of *res judicata* and collateral estoppel is made as a procedural precondition to his motion for summary judgment. Since there is no impediment to the simultaneous resolution of both these motions, I will first briefly address Meckler's motion for leave to supplement his answer.

*Res judicata* and collateral estoppel are defenses which must be affirmatively pleaded in an answer. Fed.R.Civ.P. 8(c). If, however, either of these defenses becomes available because judgment is entered after an answer has been filed, leave to supplement that answer will be freely granted. *Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 375 F.Supp. 499, 512–13 (E.D.Mich.1974), *aff'd*, 519 F.2d 119 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). Since it is clear that the *State Mutual* judgment was rendered well after Meckler's answer was filed, there was no prior judgment which Meckler could have plead in his answer as giving rise to either a *res judicata* or collateral estoppel defense. Moreover, it appears settled "that in the interest of efficient and expeditious judicial administration, the defense of *res judicata* can be raised and considered at the pretrial stage" in a motion for summary judgment. *Weston Funding Corp. v. Lafayette Towers, Inc.*, 410 F.Supp. 980, 982 n.2 (S.D.N.Y.), *aff'd*, 550 F.2d 710 (2d Cir. 1976) (citations omitted). Therefore, while compliance with Fed.R.Civ.P. 8(c) may appear to be a prerequisite to the assertion of a *res judicata* or collateral estoppel defense at trial, since these defenses were unavailable to Meckler at the time his answer to the third-party complaint was filed, they may properly be raised for the first time on his motion for summary judgment presently before the court.

### III.

■ The doctrine of *res judicata* was established primarily to avoid repetitive litigation of the same causes of action. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). A prior judgment constitutes a bar to a subsequent action between the same parties under the rules of *res judicata* when the claims and the facts surrounding the two causes of action are substantially coextensive, and the prior judgment was final and on the merits. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1232–34 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

■ It is beyond cavil that the *State Mutual* judgment dismissing Andersen's third-party complaint against Meckler was on the merits. However, before a judgment can be given *res judicata* effect, both the parties and the causes of action in the prior and subsequent suits must be identical. *Expert Electric, Inc. v. Levine*, 554 F.2d at 1233. As noted above, the plaintiffs in *State Mutual* were a group of insurance companies which had loaned funds to Black Watch allegedly in reliance on financial statements prepared by Andersen, whereas plaintiffs in this action are stockholders who purchased Bermec securities and charge Andersen with fraud in connection with its certification of financial statements. Although Meckler argues, and I agree, that there is no requirement that there be strict identity of all parties to both actions to satisfy the doctrine of *res judicata*, the cases cited by Meckler in support of that position are inapposite here.[2] Moreover, an examination of both third-party actions reveals that Andersen's claim over against Mecker is predicated upon Andersen's liability to plaintiffs in the respective actions. Therefore, the causes of actions

are necessarily dissimilar thereby precluding the invocation of the *res judicata* defense.

Under the doctrine of collateral estoppel, however, "the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327, n.5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Since the mutuality doctrine which limited the scope of collateral estoppel has been abandoned, *id.* 326–33, 99 S.Ct. 648–652; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the remaining question is whether the issues raised in this third-party complaint were "actually litigated and necessary to the outcome of" the *State Mutual* action.

■ A careful review of the third-party complaints in both actions reveals almost identical pleadings. The central issue in *State Mutual* was Meckler's knowledge of the Black Watch fraud and his failure to disclose the material facts which the *State Mutual* plaintiffs and Andersen charged he had withheld. The jury in *State Mutual* found in Meckler's favor on that issue, and since he was not liable to plaintiffs he could not be found liable to Andersen; accordingly, Andersen's third-party complaint against Meckler was dismissed.

The general allegations against Meckler set forth in the third-party complaint in the present action are substantially the same as those contained in the *State Mutual* third-party action. The question of Meckler's failure to disclose his alleged knowledge of the Black Watch fraud is likewise the central issue presented in Andersen's third-party complaint in this case. That issue was litigated in *State Mutual*. Moreover, deter-

---

2. It has been found that strict identity of parties is not required for the application of *res judicata* when both the prior and subsequent suits are shareholders' derivative actions since the corporation is the real party in interest in both suits. *See e. g. Cramer v. General Tel. & Electronics Corp.*, 582 F.2d 259 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); *Berman v. Thomson*, 403 F.Supp. 695 (N.D.Ill.1975). Other cases cited by Meckler addressed the doctrine of collateral estoppel and not *res judicata*. *See e. g., Panto v. Safeway Trails, Inc.*, 260 F.Supp. 670 (E.D. Pa.1966); *Nickert v. Puget Sound Tug & Barge Co.*, 335 F.Supp. 1162 (W.D.Wash.1971).

mination of that issue, without which the jury could not have found in Meckler's favor, was necessary to the outcome of the *State Mutual* case. Since there is no consistent way for a fact-finder in this case to find in Andersen's favor against Meckler without thereby negating the jury's determination in *State Mutual*, the doctrine of collateral estoppel requires that Meckler be granted summary judgment dismissing Andersen's third-party complaint against him.

Accordingly, summary judgment is granted in favor of third-party defendant Meckler; the third-party complaint is dismissed as against him. Submit judgment on notice within ten (10) days after entry of this decision.

SO ORDERED.