Irene **KENDALL**, Plaintiff,

v.

**AVON PRODUCTS, INC.**, Defendant.

No. 82 Civ. 3241 (CES).

United States District Court,
S.D. New York.

March 13, 1989.

Winthrop, Stimson, Putnam & Roberts by Michele A. Masucci, New York City, for plaintiff.

Epstein, Becker, Borsody and Green by Ronald M. Green, New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

 Plaintiff Irene Kendall has brought a cause of action against her former employer, defendant Avon Products, Inc. ("Avon"), alleging she was paid less during her tenure there than similarly situated male Avon employees, in violation of the Equal Pay Act of 1963 (the "Act"), 29 U.S.C. § 206(d). Avon now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons articulated below, we grant defendant's motion for summary judgment on the basis of collateral estoppel.[2]

## FACTUAL BACKGROUND

Plaintiff commenced her employment with Avon in October of 1967 as a secretary. By December of 1977, Ms. Kendall had attained the position of "Supervisor—Communications Center" in Avon's Corporate Personnel Department. In late May of 1980, plaintiff took disability leave from her position due to psychological difficulties. In a meeting held on June 4, 1980, plaintiff was informed that her job had been eliminated and that she would not be put on disability leave.

Thereafter, on March 9, 1982, she filed a complaint with the New York State Division of Human Rights ("Division of Human Rights" or "Division") charging Avon with denying her "equal terms, conditions and privileges of employment and with effectively terminating [plaintiff's] employment because of [plaintiff's] sex and temporary disability ... in violation of the New York State Human Rights Law." March 9, 1982 Complaint of Irene Kendall to New York State Division of Human Rights ("Human Rights Complaint") at ¶ 9. Specifically, the complaint alleged, inter alia, that Ms. Kendall's duties and responsibilities in her Supervisor's position "had been parallel to and substantially the same as those per-

1. Fed.R.Civ.P. 56 reads in relevant part:
 [Summary] judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

2. Defendant notes in its Memorandum of Law in Support of Defendant's Motion for Summary Judgment that after it filed its Answer to the instant complaint, plaintiff sought state court review of the decision rendered against her by the New York State Division of Human Rights. Defendant indicates that should the court so require, it would seek leave to amend its Answer to add the following affirmative defense: Plaintiff's claim for relief is barred by the federal Full Faith and Credit Statute, 28 U.S. C. § 1738, and the doctrine of res judicata.

Res judicata and collateral estoppel are defenses which must be affirmatively pleaded in the answer. Fed.R.Civ.P. 8(c). However, these defenses may be properly raised for the first time in a motion for summary judgment in a situation where these defenses were unavailable at the time of the original answer. See Tucker v. Arthur Andersen & Co., 87 F.R.D. 124, 127 (S.D.N.Y.1980), rev'd on other grounds, 646 F.2d 721 (2d Cir.1981). Indeed, these defenses may be raised at the pre-trial stage "in the interest of efficient and expeditious judicial administration" and in circumstances where, as here, "the plaintiff is provided with an adequate opportunity to present arguments rebutting the defense." Weston Funding Corp. v. Lafayette Towers, Inc., 410 F.Supp. 980, 982 n. 2 (S.D.N.Y. 1976), aff'd, 550 F.2d 710 (2d Cir.1977).

formed by male managers whose salaries were greater than [plaintiff's]." Human Rights Complaint at ¶ 7. According to the complaint, had she been made a manager, her disability benefits "would have been substantially larger." *Id.* at ¶ 8. In answer to the complaint, Avon focused primarily on plaintiff's termination, stating:

Avon's substantive defenses to the equal pay claim asserted in this proceeding will be set forth fully in the papers to be filed by Avon in the federal action. Avon's procedural defense to that claim ... will, however, be addressed herein.

November 2, 1982 Respondent's Statement of Position to the New York State Division of Human Rights at 2 n. 1 ("Respondent's Statement").

On May 19, 1982, plaintiff began the instant action in federal court[3] alleging that the defendant had unlawfully discriminated against her on the basis of sex by paying her a lower salary than similarly situated male employees in violation of the provisions of the Equal Pay Act, 29 U.S.C. § 206(d).[4]

On April 27, 1983, the Division of Human Rights determined there was "No Probable Cause to believe that the respondent(s) engaged in or was (were) engaging in the unlawful discriminatory practice complained of." It went on to conclude:

The investigation did not disclose sufficient evidence to support the allegations contained in the complaint that the complainant was denied equal terms, conditions and privileges of employment because of her sex and her disability. The investigation did, however, disclose that the respondent had a corporate wide reorganization that resulted in the layoff of five (5) percent of its workforce ... [and that] complainant's job was eliminated during this reorganization and the complainant was subsequently terminated.

April 27, 1983 Determination and Order After Investigation of the New York State Division of Human Rights, Case No. IB-E-D-82-81301 ("Division Determination").

During the course of these proceedings, plaintiff fired her attorney, and on August 2, 1984 appealed *pro se* the Division Determination to the Supreme Court of the State of New York, Appellate Division, First Department. Her brief to the Appellate Division disputed the "No Probable Cause" determination on the grounds that the Division of Human Rights "never heard [her] complete complaint and, therefore, never fully investigated all the pertinent facts." Petitioner's Brief to the Supreme Court of the State of New York, Appellate Division, First Department ("Conclusion" section) (hereinafter "Petitioner's State Court Brief"). Plaintiff's brief, which focused on her termination, concludes that her

employment was terminated by Avon because they expected [her] to do more than twice the work of [another male employee], with half the staff and much less management support.... while wearing a supervisor's title instead of the manager title ... [and] in return, Avon expected [her] to be satisfied with $10,000. [sic] less per year in salary and not to voice any objections to obvious sex discriminatory treatment [sic].

*Id.*

On October 25, 1984, the Appellate Division, First Department, affirmed the Division Determination in all respects.

Avon now contends that pursuant to the Full Faith and Credit Statute, 28 U.S.C. § 1738, and the doctrine of res judicata, the state court judgment precludes plaintiff, as a matter of law, from litigating the instant claim in federal court.

Plaintiff responds that the state court decision should not be accorded preclusive effect since she never had the opportunity to litigate her equal pay claim, although

---

**3.** This action was discontinued in June of 1984 and subsequently reopened on April 25, 1986.

**4.** 29 U.S.C. § 206(d) reads in relevant part:
No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the

rate at which he pays employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

she concedes that she "ostensibly did state an Equal Pay Act claim in her state court action." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 2. Plaintiff argues that the state court did not review any evidence concerning her equal pay claim, and did not address the claim in its disposition. Moreover, Ms. Kendall asserts that she did not have a full and fair opportunity to litigate her equal pay claim as she brought her state court action "while laboring under severe emotional distress." *Id.*

## DISCUSSION

The Full Faith and Credit Statute (hereinafter "Section 1738") states in relevant part that

> [t]he ... records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State....

28 U.S.C. § 1738 (1982).

■ The Supreme Court has construed Section 1738 to require that federal courts "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1981); *see also Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Therefore, a party may not relitigate the same claims in federal court if state law would bar them from doing so in a subsequent suit in state court. *See Ruiz et al. v. Commissioner of the Department of Transportation of the City of New York et al.,* 858 F.2d 898, 902 (2d Cir.1988). Further, "[w]hen a plaintiff has sought state judicial review of an agency decision, *Kremer* requires that we look to the preclusive effect that New York would give to the judgment of its court." *Bray v. New York Life Insurance,* 851 F.2d 60, 63 (2d Cir.1988). We must there-fore now determine what preclusive effect New York would give to the October 25, 1984 judgment of the Appellate Division, First Department, affirming the Division Determination.

*Res judicata* embraces two concepts, claim preclusion (or *"res judicata"*) and issue preclusion (hereinafter "collateral estoppel"). *See Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir.1985). Defendant's moving papers discuss both concepts, but focus primarily on claim preclusion. Plaintiff's papers concentrate on collateral estoppel. While it is unnecessary, given the ultimate disposition of this motion, for this court to address both concepts, we will do so nevertheless for the sake of clarity.

## CLAIM PRECLUSION

Under the doctrine of claim preclusion, a judgment on the merits by a court of competent jurisdiction will be regarded as the "full measure of relief to be accorded between the same parties on the same ... 'cause of action.'" *Murphy,* 761 F.2d at 879 (quoting *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535 (5th Cir.1978)). New York applies a "transactional identity" approach to claim preclusion, under which "a claim that could have been asserted under a given set of facts in a concluded action is barred from being asserted under the same set of facts in a subsequent action." *See, e.g., Heimbach v. Chu,* 744 F.2d 11, 14 (2d Cir.1984) (citing *Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978)), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 141 (1985). In addition, under New York Executive Law § 300 (McKinney 1982) the final determination of a discrimination case decided by the Division of Human Rights and reviewed by the state court "shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned." *See also Rashid v. American Electric Power Service Corp.,* 646 F.Supp. 251, 251–52 (S.D.N.Y.1986) (citing N.Y.Exec.Law § 300 (McKinney 1982)).

The posture of the instant action, however, is somewhat unusual in that the cir-

cumstances do not fall neatly into "previous action" and "subsequent action" categories. Here, the state proceedings and the instant federal court action were initiated by plaintiff nearly simultaneously and without objection by defendant. Plaintiff even concedes that an equal pay claim was "ostensibly stated" before the state court. That being conceded, it is clear that plaintiff's sex and disability discrimination claim before the state court encompassed allegations of both unequal compensation and unfair termination.

■ In circumstances where simultaneous actions are being brought concerning the same claim, *res judicata* normally would attach to the first judgment entered. *See Williams v. Ward*, 556 F.2d 1143 (2d Cir.1977); *see also* 18 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4404 (1981). However, an exception to the *res judicata* rule has been articulated by courts and commentators:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) of Judgments § 26 Comment a (1982); *see also Calderon Rosado v. General Electric Circuit Breakers*, 805 F.2d 1085, 1087 (1st Cir.1986); *Brown v. Lockwood*, 76 A.D.2d 721, 740–41, 432 N.Y.S.2d 186, 199–200 (2d Dept. 1980).

The rationale behind such an exception is obvious. If the purpose of the *res judicata* doctrine is to provide finality in the resolution of disputes and to protect defendants from being vexed by multiple suits, "it stands to reason that acquiescence by the defendant will work a waiver." *Brown*, 76 A.D.2d at 740, 432 N.Y.S.2d at 199.

■ In the instant matter, defendant did not at any time in either action object to plaintiff's claims on the basis that another action was pending based on the same claim. In fact, before the Division of Human Rights, defendant concentrated almost exclusively on the unfair termination claim, and expressly declined to respond substantively to plaintiff's equal pay claim, stating that it would do so in the pending federal court action. *See* Respondent's Statement at 2 n. 1. Therefore, as defendant did not object in any way to the simultaneous suits, and implied that it would defend against the federal claim separately and differently, it effectively acquiesced in plaintiff's splitting of her discrimination claim between federal and state courts. Therefore, defendant should not be permitted to assert claim preclusion in the instant action. We now turn to defendant's assertion that plaintiff is collaterally estopped from bringing the present action.

## COLLATERAL ESTOPPEL

■ Collateral estoppel prevents a party from relitigating an issue of fact or law that has been decided in an earlier suit. *Murphy*, 761 F.2d at 879. That is, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in a subsequent suit on a different cause of action involving a party to the prior litigation." *Brontel, Ltd. v. City of New York*, 571 F.Supp. 1065, 1068 (S.D.N.Y.1983), *aff'd*, 742 F.2d 1439 (2d Cir.), *cert. denied*, 469 U.S. 882, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). To invoke collateral estoppel under New York law it must be shown that

> the party against whom collateral estoppel is sought to be invoked had a full and fair opportunity to contest the decision said to be dispositive of the present controversy ... [and] there must be proof that the issue in the prior action is identical, and thus decisive, of that issue in the current action.

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328, 1331–32 (1979); *see also Schwartz v. Public Administrator of*

*the County of Bronx,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969) (two requirements for collateral estoppel are identity of issue which was necessarily decided in prior action and decisive in present action, and full and fair opportunity to contest decision said to be controlling).

In her brief to the Appellate Division, plaintiff's theory was that she was terminated because Avon expected her to do "more than twice the work" of similarly situated male employees and receive $10,-000 less per year than similarly situated male employees while not voicing "any objections" to the discriminatory treatment. *See* Petitioner's State Court Brief ("Conclusion" section). According to plaintiff, this discriminatory treatment caused her resultant disability. *See* Petitioner's State Court Brief ("Facts" section on the fourth page). Avon then, plaintiff alleges, terminated plaintiff to avoid making any disability payments to her. Petitioner's State Court Brief ("Conclusion" section). In addition, plaintiff asserted before the Appellate Division that she believed she was "targeted" for termination because she had "sought fair and equitable treatment as a woman and as a disabled person." September 20, 1984 Petitioner's Reply Brief to the Appellate Division, First Department (hereinafter "Petitioner's Reply Brief") (second page).

■ Even assuming the Division of Human Rights and the Appellate Division only considered and decided her unfair termination cause of action, we think it is clear that in doing so the agency and state court must have actually and necessarily decided the merits of her allegations of unequal treatment and compensation in order to find that she was not denied "equal terms, conditions and privileges of employment because of her sex and her disability." Division Determination (first page). *See Wilder v. Thomas,* 854 F.2d 605, 620 (2d Cir. 1988) (issue is "actually decided" if it constitutes, logically or practically, necessary component of decision reached). It may

well be argued a finding that plaintiff was unfairly compensated before her termination is not essential to a finding that plaintiff was terminated for reasons other than unfair compensation. However, given the plaintiff's theory and the Division's express finding that she was not denied equal "terms, conditions, or privileges of employment," we find such an argument unpersuasive. *But cf. Tucker v. Arthur Andersen,* 646 F.2d at 728–29 (if several factual issues were litigated, collateral estoppel will not lie as to the relitigation of one of those issues if it is not known which of those factual issues were decisive in final general jury verdict).

Further, a comparison of the complaint to the Division of Human Rights and the complaint filed in this court on May 19, 1982 lends support for a finding that there was an identity of issue. *See Wilder,* 854 F.2d at 619 (finding of identity of issue may be supported by comparison of the pleadings). In her complaint to the Division of Human Rights, plaintiff stated, "[o]n information and belief, before I began my disability leave my supervisor position's duties and responsibilities had been parallel to and substantially the same as those performed by male managers whose salaries were greater than mine." Human Rights Complaint at ¶ 7. In her federal complaint plaintiff states, "[d]uring the period of employment, the plaintiff performed her duties for a rate less than that paid to the *male employee who preceded her* ... [a]lthough the jobs performed by the plaintiff required equal skill, effort, qualifications and responsibility under similar working conditions." Complaint of Irene Kendall at ¶ 9. Thus, to a great extent, the language in paragraph seven of the Human Rights Complaint is duplicative of the language of paragraph nine of the federal complaint. Accordingly, we find that the identical issue of unequal treatment and compensation raised in plaintiff's Equal Pay Act claim was actually and necessarily decided in the prior state proceedings regarding her termination.[5]

---

**5.** Plaintiff may believe that the basis for the Division's finding or the Appellate Division's af-

firmance was inadequate. However, it is not an appropriate function of this court to determine

Plaintiff asserts that collateral estoppel is not appropriate in this action because she "never had a full and fair opportunity to litigate her claim under the Equal Pay Act." Plaintiff's Memorandum at 2. First, plaintiff avers that she was so mentally impaired during the proceeding before the Division of Human Rights that, "[t]hough represented by counsel at this stage ... she could not adequately participate in the prosecution of her claim." Plaintiff's Memorandum at 9. Second, plaintiff implies that she was inadequately represented by counsel during these proceedings. *Id.* at 18 ("Plaintiff's attorney failed to utilize several opportunities provided by the Division to submit further evidence"). Third, plaintiff contends that the proceedings before the Division of Human Rights did not afford her an opportunity to present important evidence and testimony regarding inequality in pay and discriminatory conditions, resulting in the Division's findings being substantially based on evidence submitted by Avon. *Id.* at 19. Finally, plaintiff claims that she litigated *pro se* before the Appellate Division in a "compromised psychological state." *Id.*

At the outset, to put plaintiff's contentions into perspective, it is helpful to briefly review the "full and fair opportunity" requirement. It is the product of the abandonment of the requirement of mutuality in estoppel doctrine. *See, e.g., Blonder–Tongue v. University Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Mutuality required that "neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment ... [and therefore] the mutuality requirement provided a party who had litigated and lost in a previous action an opportunity to relitigate identical issues with new parties." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326–27, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1978). In abandoning the requirement of mutuality, it became possible for a new defendant to collaterally estop a plaintiff who had previously lost on an identical

issue against a different defendant ("defensive estoppel"). Hence, "whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate [became] a most significant safeguard." *Parklane Hosiery,* 439 U.S. at 328, 99 S.Ct. at 650 (quoting *Blonder–Tongue,* 402 U.S. at 329, 91 S.Ct. at 1443).

The "full and fair opportunity" requirement took on added significance in the context of the "offensive" use of collateral estoppel where a plaintiff could estop a defendant from relitigating issues which the defendant previously litigated and lost *vis a vis* a different plaintiff. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1978). This "offensive" use had hidden and inequitable possibilities for a defendant, particularly if in the first action the defendant had little incentive to defend vigorously due to the nominal damages being demanded and where there was little foreseeability of future litigation, or if there were differences in available procedure between the first and second actions, or if the defendant was forced to defend in the first action in an inconvenient forum. *Parklane Hosiery,* 439 U.S. at 330–31, 99 S.Ct. at 651.

It was in this context that the New York Court of Appeals enunciated that under New York law an "exploration of the various elements which make up the realities of litigation" was necessary to a determination that a party had a "full and fair opportunity" to litigate the prior action. *Schwartz v. Public Administrator of the County of Bronx,* 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729 (1969) (collateral estoppel applicable where driver sues driver following a verdict by passenger against both, as each driver, defendants in previous action, had full and fair opportunity to remove himself from liability).

It is clear, however, that the primary dangers which the "full and fair opportunity" requirement seeks to avoid—i.e., the

the quality of the prior state findings. Any issues in this regard were more appropriate for

appeal in state court.

potential prejudice to defendants from a plaintiff's "offensive" use of collateral estoppel, and the potential prejudice to plaintiffs in a subsequent suit against new defendants—are not implicated in the instant action where there is complete mutuality of the parties, and where plaintiff, within the context of her unfair termination claim, had full incentive to present her evidence of unequal compensation in the first instance.

Second, plaintiff's reliance on *Ryan v. New York Telephone Company,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984), to support her claim that she was not afforded a "full and fair opportunity" to litigate is unavailing. In *Ryan,* the Court of Appeals, while observing that a court had to look to the "realities of the prior litigation" in evaluating "full and fair opportunity," nevertheless found that collateral estoppel precluded the relitigation of a prior administrative determination rendered by an administrative law judge after a hearing. The Court of Appeals stated that the burden to establish the absence of a "full and fair opportunity" to litigate rested on the opponent of collateral estoppel. *Id.* at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491. Further, the *Ryan* court primarily focused on the process accorded the litigant in assessing whether he had a "full and fair opportunity" to litigate. *Cf. Bray v. New York Life Insurance,* 851 F.2d 60, 64–65 (2d Cir.1988) (Division of Human Rights proceedings satisfy minimal procedural requirements of due process to qualify for full faith and credit guarantees and proceedings provide litigant with full and fair opportunity to litigate). In *Ryan,* the fact that the administrative hearing was "sufficiently extensive and fully adversarial," that the hearing was initiated by the plaintiff, and that the plaintiff knowingly chose to be represented by a union official rather than legal counsel, satisfied the "full and fair opportunity" requirement of collateral estoppel preclusion. *Ryan,* 62 N.Y.2d at 503–04, 478 N.Y.S.2d at 828, 467 N.E.2d at 492; *cf. DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 118 (2d Cir.) (plaintiff's ability to "flesh out" issues at Division of Human Rights hear-

ing represents "full and fair opportunity" to litigate), *cert. denied,* —— U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

Before the Division, plaintiff was represented by counsel. In addition, the Division expressly asked plaintiff's attorney to supply any information not contained in the inital briefs and letters to the Division. Thus the opportunity afforded plaintiff to "flesh out" the issues before the Division was present. Moreover, while plaintiff specifically and expressly complained of the inadequacy of the administrative proceedings below to the Appellate Division, *see* Petitioner's State Court Brief ("Conclusion" section), she does not allege any deficiency in the process afforded her before the Appellate Division. Indeed, plaintiff stated to the Appellate Division that "[t]his is the first opportunity I have had to provide the full facts to anyone other than my ex-attorney." Petitioner's Reply Brief (first page). Accordingly, whatever complaints plaintiff may have had about the process afforded her before the Division, she certainly does not have the same complaints about the process afforded her before the Appellate Division.

 Finally, there is a presumption of sanity under New York law. *See, e.g., Angelo v. Angelo,* 28 Misc.2d 1018, 220 N.Y.S.2d 744 (N.Y.Sup.Ct.1961). Therefore, even if plaintiff's alleged psychological difficulties while litigating before the Appellate Division in 1984 were enough for this court to conclude that she did not have a "full and fair opportunity" to litigate, and we would be hesitant to so conclude, there are no medical records or other documentation before us in this motion to indicate the existence of this mental condition in 1984 supporting the uncorroborated statements in plaintiff's affidavit. This lack of support is all the more glaring given that there is before the court a letter written by plaintiff in 1982, two years before her appearance before the Appellate Division, to an Yvonne Watson, an Avon employee, indicating that plaintiff had been released from St. Joseph's Medical Center and was able and willing "to return to gainful employment as soon as possible." Plaintiff's Rule

3(g) Statement, Exhibit B. We conclude plaintiff has failed to sustain her burden that she did not have a "full and fair opportunity" to litigate her claims in state court.

On a motion for summary judgment, the burden is on the moving party to establish the lack of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed. 2d 142 (1970). However, there is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To avoid summary judgment, a nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Dister v. The Continental Group,* 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514). Summary judgment is an appropriate remedy when the moving party is entitled to a judgment as a matter of law based on the doctrine of *res judicata. See e.g., Bray v. New York Life Insurance,* 851 F.2d 60 (2d Cir.1988).

Consequently, we grant defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant having established that there is no genuine issue of material fact, and that it is entitled to a judgment as a matter of law.

## CONCLUSION

The motion for summary judgment of defendant Avon Products, Inc. is granted for the reasons articulated above.

SO ORDERED.