**Dimitrios D. SIRINAKIS, Plaintiff,**

**v.**

**COLONIAL BANK, Defendant.**

**No. 82 Civ. 7628 (MJL).**

United States District Court, S.D. New York.

Sept. 28, 1984.

Burlingham, Underwood & Lord, New York City, for plaintiff.

Cadwalader, Wickersham & Taft, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

Plaintiff Dimitrios D. Sirinakis ("Sirinakis") commenced this maritime and diversity action against defendant Colonial Bank ("Colonial" or "the bank"), seeking to recover compensatory and punitive damages up to $96,000,000 for breach of contract and intentional tortious conduct designed to destroy plaintiff's business and deprive plaintiff of his revenue-earning property, i.e., three ocean-going vessels.

Before the Court is a motion for dismissal by Colonial brought pursuant to Rule 12(b)(6). Both parties have relied on facts and documentary proof outside the pleadings,[1] therefore, the Court will treat this

1. Among the outside materials submitted by defendant in support of its motion are an affidavit sworn to by Christopher Elwen, on December 17, 1982, an affidavit sworn to by Stephen G. Austin on February 9, 1983, a copy of a letter agreement dated February 25, 1982 and copies of loan and mortgage agreements and guarantees. The plaintiff has submitted affidavits

motion as a motion for summary judgment. Fed.R.Civ.P. Rule 12(b).[2]

FACTS

*Background*

Plaintiff Sirinakis, a Greek citizen, was at all times relevant hereto the president of three shipping companies ("shipping companies"): Gave Shipping, Incorporated, a Panamanian corporation, which owned the vessel Margareta, Anemodea Shipping Company, a Greek corporation which owned the vessel Anemodea, and Thalassarchis Shipping Company, a Liberian corporation which owned the vessel Paralos. Sirinakis is principal shareholder in Anemodea and Gave. He is 50% shareholder in Thalassarchis, the remaining 50% of the shares being owned by Vassilios Fassoulis, a Greek national.

In February 1981, Anemodea Company and Gave Company borrowed $2,400,000 from Colonial.[3] This loan was secured by, among other things, a mortgage on the Paralos. Fassoulis and Sirinakis each guaranteed Thalassarchis' obligation to Colonial. The loan agreements contained an acceleration clause which entitled Colonial to demand payment of the entire outstanding indebtedness of the loan in the event that the borrower failed to pay the principle of interest when due.

On or about February 19, 1982, a semiannual payment of $686,080 was due Colonial from Gave and Anemodea pursuant to the February 17, 1981 loan agreement. The shipping companies did not make this payment. Elwin Aff. ¶ 8; Sirinakis Aff. ¶ 11. On February 23, 1982, Colonial informed Gave and Anemodea of its intention to accelerate the debt and demanded payment in full of the February 17, 1981 loan in the total amount of $2,137,923.50.

*The Letter Agreement*

On February 24, 1982, the parties began negotiations in New York City respecting the shipping companies' defaults. Among those present at the February 24, 1982 meeting were Mr. Martin Northcutt, on behalf of Colonial, Mr. Sirinakis, and Sirinakis' attorneys, Messrs. Joseph Smith and John Osborne. During the negotiations, Sirinakis requested, on behalf of the shipowning companies, a moratorium on principal and interest payments in order to allow time for the shipping market to rebound and to put the companies in a position to be able to repay the debt. Sirinakis Aff. ¶ 12.

The result of the negotiations was a letter in which Colonial specified certain conditions under which it was "prepared to postpone taking any action to enforce its security in accordance with the ... [Aug. 28, 1981 and Feb. 17, 1981] Loan Agreements." *See* February 25, 1982 letter, Defendants' Exhibit 2. Included in these conditions were the following:

(1) On or before March 12, 1982, an agreement for the sale of the Anemodea was to be completed; this sale was subject to Colonial's prior approval of the purchaser and financial assistance.

(2) By March 26, 1982, the Paralos was to be delivered or fixed for delivery within

sworn to by Joseph C. Smith, John S. Osborne, and Dimitrios D. Sirinakis. In addition, plaintiff relies on the letter agreement and other matters submitted by the defendant. Although the Court would ordinarily afford the parties an opportunity to amend their papers and submit statements in accordance with Local Rule 3(g), we find that additional submissions would not be relevant in this case. The Court's decision rests primarily on documentary proof, and allegations made in the Complaint. Certain undisputed facts raised in the parties' affidavits are relied upon only as background material.

2. Rule 12(b) provides:

If, on a motion asserting the defense numbered (6) for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

3. The loan documents are attached as Exhibits 3, 4, 5, 6, 7, 8 and 9 to the affidavit of Christopher Elwen. The facts surrounding the loans, which are not in dispute, are set forth in the Elwen and Sirinakis affidavits.

14 days thereafter into a time charter for a period of not less than 12 months.

The letter stipulated that if these conditions were met and if no creditors had taken any legal steps against any of the vessels, Colonial would renegotiate the terms of the loan agreements so that the shipping companies' future obligations under the renegotiated agreements could be met out of the shipping companies' existing cash flow. At that point, the notice of demand would be withdrawn by Colonial.[4]

The letter further indicated that, to protect its security, Colonial might have to make further cash advances. Although Colonial was "not in any way obliged to make any such advances, ... it would be prepared to give favorable consideration to such advances being made so as to enable ... [Sirinakis] to perform the agreement contained ... [therein]."

Although the letter specified that Colonial was not obliged to make any further advances, Sirinakis alleges that at the February 24, 1982 meeting, Mr. Northcutt assured him orally that Colonial would be willing to advance funds to allow the continued operation of the vessels. Sirinakis alleges that Northcutt agreed to provide $35,000 to bunker the Margareta. In addition, Sirinakis claims that Northcutt agreed that if the Paralos were to put into Malta, Colonial would provide the necessary money to arrange for crew changes and supply necessary fuels and supplies.[5]

Sirinakis further alleges that he took steps to satisfy the condition in the letter agreement that he sell the Anemodea, but that Colonial's actions hindered this attempt. He alleges that on or about February 25, 1982, he advised Colonial that he had a potential buyer willing to pay $1,000,000 for the Anemodea. On March 3, 1983, he advised Colonial that the buyer was a corporation controlled by a Mr. E. Geronimakis. He indicated that if Mr. Geronimakis were not acceptable, another potential buyer would be available. On March 4, 1982, Colonial telexed that Mr. Geronimakis was, in principle, an acceptable buyer. However, on March 5, Colonial advised Sirinakis that it had no knowledge of Geronimakis and was unable to determine whether he was acceptable.

*The Arrest of the Ships*

*The Anemodea*

During the week of March 1, 1982, the Anemodea was formally arrested in Avonmouth, England. One of the arresting companies was Hellarabia, a fuel supplier, which asserted a statutory maritime lien for unpaid bunker bills in excess of $130,000. On March 3, 1982, Sirinakis wired Colonial requesting that Colonial transfer $157,000 in order to avoid "disastrous situations". Colonial did not send this money.

On March 16, 1982, Colonial separately effected an arrest of the vessel, by process issued in an action seeking foreclosure of its mortgage, commenced in the Admiralty Court of the Queen's Bench Division of the High Court of Justice in London (the "London Admiralty Court").

By order of the London Admiralty Court dated March 22, 1982, the Anemodea was sold *pendente lite*. By final decree and judgment dated April 6, 1982, the London Admiralty Court: (i) "pronounced for the force and validity of the Greek mortgage Deed herein dated 21st February 1981", and (ii) rendered judgment in favor of Colonial in the amount of $2,061,308.40, the amount adjudged to be outstanding owing to Colonial under the joint and several loan

4. The letter expressly stated that the terms of both the Feb. 1981 and Aug. 1981 loan agreements and Colonial's notice of demand remained in full force. It stated that if the Feb. 28, 1981 payment on this loan was not made, Colonial would be free to serve a notice of demand.

The letter also specified that "[i]n the event that any person, corporation or government agency shall take any action against any of the vessels, we shall not be obliged to take any steps to counter or defend such action. In the event of any of the vessels being arrested the agreements contained herein shall, at our option, be null and void."

5. Pursuant to their employment contracts, certain seamen were to be repatriated and replaced.

agreement between Colonial as lender and Anemodea Company and Gave Company as borrowers.

Since the loan was a joint and several loan to Anemodea Company and Gave Company, default by either company entitled Colonial to judgment for the full amount of the loan, as the London Admiralty Court ordered. Although Anemodea Company, Gave Company and Sirinakis had notice of the foreclosure action in the London Admiralty Court, none of them appeared in that proceeding.

*The Margareta*

On or about March 3, 1981, the Margareta was arrested in Augusta, Sicily by Hellarabia on a claim in excess of $170,000. Sirinakis informed Colonial of this arrest and requested funds to settle the claim. Colonial did not provide the funds. However, Colonial eventually did arrange a settlement with Hellarabia and the vessel was released.

After release from arrest, Colonial instructed the Margareta to proceed to Piraeus, Greece, where Colonial arrested the vessel. On November 8, 1983, a judgment of the courts of Greece was rendered in favor of Colonial against the Margareta. Neither Sirinakis nor the shipping companies appeared to defend the foreclosure.

*The Paralos*

On or about February 28, 1982, Thalassarchis defaulted on its loan from Colonial by failing to make a $386,432.99 payment. On March 2, 1982, Colonial gave notice of default and of its election to accelerate the debt and demanded payment of $1,895,779.68. Sirinakis alleges that, on March 4, 1982, he had a conversation with Mr. Northcutt in which Northcutt indicated that, although the Anemodea and the Margareta had been arrested, Colonial nonetheless considered the February 25, 1982 letter agreement to be in effect, Sirinakis claims that Northcutt demanded that Sirinakis direct the Paralos to enter port in Malta. Sirinakis alleges that in reliance on this confirmation, he arranged for the Paralos to enter port at Malta.

When the Paralos entered port, she was arrested by a supplier. Sirinakis alleges that he made numerous requests to Colonial to advance funds. Colonial did not comply. Instead, the bank joined in the arrest and began foreclosure proceedings. Sirinakis did not appear to defend the Paralos. However, Thalassarchis, through Fassoulis, did appear and he objected to the sale of the Paralos.

The Commercial Court in Malta ordered the sale of the Paralos, rendered a foreclosure judgment in favor of Colonial on its mortgage in the amount of $1,650,000 and allowed Colonial to bid up to that amount for the vessel at the foreclosure sale.

*Colonial's Action on the Guarantees*

On December 17, 1982, Colonial commenced an action against Sirinakis in the High Court in London, Queen's Bench Division, to collect the balance of the debt due from the shipping companies under Sirinakis' guarantees. Affidavit of Christopher Elwen, sworn to December 17, 1982 (the "Elwen Aff."), ¶ 20. Colonial brought that action pursuant to Sirinakis' submission to English jurisdiction and the forum selection clauses contained in his guarantees. *Id.*, ¶ 20. The Writ of Summons and Statement of Claim (Elwen Aff., Exh. 24) were duly served upon London solicitors designated in Sirinakis' guarantees as his agents for service of process. In addition, Sirinakis had actual notice of Colonial's action in London against him since the Elwen Affidavit, referring to such action, was served on his attorneys herein on December 20, 1982. Under English rules of procedure, Sirinakis had fourteen days from service of process within which to submit an intention to appear and defend. *Id.* Sirinakis defaulted.

On January 12, 1983, the London Commercial Court rendered a default judgment against Sirinakis in the amount of $5,987,811.95. Austin Aff., Exh. A.

Plaintiff, by his complaint, purports to make five claims for relief. However, as his own memoranda seems to recognize, he actually makes only two distinct claims: First, he claims that the "wrongful fraudulent and intentional actions of Colonial in

refusing and failing to provide funds to allow the continued operation of Margareta and Paralos and in refusing to approve a buyer for Anemodea constituted breach of the Agreement entered between Colonial and Sirinakis." [6]

In plaintiff's Second Cause of Action, he claims that the "wrongful, fraudulent and intentional actions of Colonial ... constituted a tortious interference with the business of plaintiff." [7]

Colonial makes several arguments in favor of dismissal. First, it argued that all of plaintiff's claims are barred by judgments rendered in England, Malta and Greece since the ultimate facts and issues necessary to those judgments are identical to the ultimate facts and issues alleged by plaintiff here. Second, Colonial contends that plaintiff's claims should be dismissed because it is the shipping companies, and not Sirinakis, who are the real parties in interest in this case. According to Colonial, "[t]he claims [Sirinakis] asserts, and the damages he claims, if they exist at all, belong to the Shipping Companies, not to Sirinakis individually." Defendant's Memorandum at 27.

Next, Colonial argues that plaintiff's contract claim should be dismissed because it fails to state a claim under the clear and express terms of the letter agreement. Colonial asserts that any oral evidence that it made commitments beyond those included in the letter agreement is barred by the parol evidence rule.

Fourth, Colonial maintains that any personal claims which Sirinakis has against the bank must be litigated in England because the guarantees Sirinakis signed "contain valid forum selection clauses whereby Sirinakis submitted to the jurisdiction of the English courts and designated the courts of England as the forum for any disputes between Colonial and Sirinakis individually related to loans or guarantees." Defendant's Memorandum at 35.

Finally, Colonial argues that the complaint should be dismissed under the doctrine of forum non conveniens.

As set forth below, we agree with Colonial that all of plaintiff's claims are barred under the doctrine of *res judicata.* Therefore, we need not reach the other issues raised by Colonial.

DISCUSSION

To date, four judgments have been rendered by the courts of England, Malta and Greece in connection with the arrest, foreclosure and sale of the vessels Anemodea, Paralos and Margareta, and with respect to plaintiff's obligation under the guaranty. These judgments are as follows:

1) English *in rem* judgment in favor of Colonial Bank and against the vessel Anemodea, dated April 6, 1982 (Exhibit 13 to affidavit of Christopher Elwen, sworn to December 17, 1982);

6. Although it is not clear from the Complaint, plaintiff's memorandum suggests that he is claiming in the alternative, fraudulent inducement to enter into the letter agreement.

7. Plaintiff's Third Cause of Action alleging that the "wrongful fraudulent and intentional actions of Colonial described above destroyed the business and reputation and good will of Sirinakis, making it impossible for him to continue in business and personally subjecting him to claims and litigations to which he is unable to respond" does not appear separate and distinct from his Second Cause of Action, and states, at most, an element of plaintiff's alleged damages. Similarly, plaintiff's Fourth Cause of Action, which states that the "wrongful fraudulent and intentional acts of Colonial aforesaid were without any legitimate business purpose and their sole intended purpose was to deprive Sirinakis of the use of the vessels and to force Sirinakis out of business" seems duplicative of his Second Cause of Action. Although this Cause of Action might be read to allege prima facie tort, plaintiff has failed to plead special damages necessary to support such a claim. *See Kalso Systemet, Inc. v. Jacobs,* 474 F.Supp. 666, 671 (S.D.N.Y.1979). Finally, in his Fifth Cause of Action, plaintiff alleges that "[a]s a result of Colonial's wrongful and malicious actions ... Sirinakis has been subjected to numerous claims and litigations to which he is unable to respond. If Sirinakis is held liable, he is entitled to indemnification from Colonial." This cause of action also seems to be more a claim for a particular type of damages than a separate cause of action. Plaintiff states no new grounds for these damages. *See also* Footnote 10, *infra,* at 19.

2) Maltese *in rem* judgment in favor of Colonial Bank and against the vessel Paralos, dated May 17, 1982 (Exhibit 18 to the affidavit of Christopher Elwen, sworn to December 17, 1982);
3) Green *in rem* judgment in favor of Colonial Bank and against the vessel Margareta, dated November 8, 1983 (attached to defendant's letter of January 12, 1984);
4) English judgment in favor of Colonial Bank and against plaintiff Sirinakis individually, as guarantor of the obligations of the shipping companies, dated January 12, 1983 (Exhibit A to the affidavit of Stephen G. Austin, sworn to February 9, 1983).

As defendant points out, the *in rem* judgments necessarily established:

1) the validity of Colonial's mortgage on the vessels in question;
2) the existence and validity of Colonial's claim against the vessels; and
3) the existence of default by the shipping companies under the mortgage deeds and Colonial's right to proceed with foreclosure.

The *in personam* judgment against Sirinakis as guarantor necessarily rested on the same findings and, in addition, established that Colonial was entitled to money judgments against Sirinakis and the shipping companies pursuant to the loan and mortgage agreements and Sirinakis' personal guarantees thereof.

Colonial argues that the premise of the complaint herein is plainly inconsistent with findings necessary to the prior judgments:

> Viewed in any light, the complaint is founded upon the premise that the Letter modified the mortgages [8] and that Colonial, as mortgagee, breached the mortgages as modified. This would be a defense to foreclosure. *See Christensen v. Columbia Acceptance Corp.*, 66 Wash.2d 309 [347], 402 P.[2d] 497 (1965). The judgments of foreclosure included the contrary findings that the Shipping Companies were in default and that Colonial was entitled to foreclose on its mortgages. Plaintiff's complaint therefore flies in the face of the clear *res judicata* effect of those foreclosure judgments and as such must be dismissed. [Footnote omitted].

Memorandum of Law in Support of Defendant's Motion to Dismiss ("Defendant's Memorandum") at 13.[9] Colonial contends that the *res judicata* effect on the prior judgments can be applied to Sirinakis on several different theories.

First, Colonial argues that Sirinakis' action is barred under the doctrine of *The Mary,* 13 U.S. (9 Cranch) 125, 143–44, 3 L.Ed. 678 (1815), because it is essentially a collateral attack upon the *in rem* judgments of foreclosure rendered against the vessels. Under *The Mary,* an admiralty court exercising *in rem* jurisdiction has the power to issue a judgment against a vessel which is binding on all the world. See Footnote 9 *supra* at 16.

Second, Colonial argues that Sirinakis is barred from maintaining this action because, as guarantor of the obligations of the shipping companies, he is in privity with the shipping companies against whom judgments of foreclosure have been rendered.

Third, Colonial asserts that Sirinakis' present claims are barred on the theory that, if the shipping companies were not signatories to the letter agreement, they

8. Colonial reasoned that Colonial's alleged agreement to forbear from foreclosure and to advance funds for the operation of the Paralos and Margareta is inconsistent with Colonial's rights and obligations under the mortgages. Thus, plaintiff must be alleging that the letter agreement constituted a modification of the mortgages. *See* Defendant's Memorandum at 13–14.

9. Plaintiff's Memorandum of Law was filed prior to the rendering of the English judgment against Sirinakis personally. Thus the portion of that Memorandum quoted above refers only to the foreclosure proceedings. In its Reply Memorandum, Colonial made the argument that the letter agreement could have been raised by Sirinakis in the English action on the guarantee as well as by the ship owners in the foreclosure proceedings.

were third-party beneficiaries of that agreement, and therefore Sirinakis, as promisee, is barred by the judgments against them.

Finally, Colonial maintains that the claims herein are barred by *res judicata* because, assuming the letter agreement was an agreement between Colonial and Sirinakis personally, Sirinakis could have raised the letter agreement as a defense to Colonial's action against Sirinakis on the guarantees.

Plaintiff responds that Colonial's *res judicata* argument is based on a mischaracterization of the complaint. According to plaintiff, he is not alleging that the letter agreement modified the mortgages or that the foreclosures were wrongful vis-a-vis the shipping companies:

> The causes of action in the complaint are based on a separate and independent agreement between Sirinakis and Colonial. As the ship-owning companies are not parties to the February 25, 1982 [letter] agreement it cannot be an amendment to, or an integral part of the February 17, 1981 and August 28, 1981 loan agreements or the related ship mortgages. Sirinakis is suing on a separate agreement and upon causes of action with separate and distinct elements from defenses or claims which might have been asserted in the mortgage actions.

Plaintiff's Memorandum at 10.

Plaintiff argues that since the shipping companies were neither signatories or intended beneficiaries of the letter agreement, they could not have raised breach of the agreement as a defense to foreclosure. Nor could Sirinakis have raised the letter as a defense to foreclosure since he had no personal stake in the vessels and thus no standing. Plaintiff further argues, without elaboration, that his present claims are separate and independent of any defense which could have been raised by him in the English action on the guarantees. Plaintiff urges that the court should not apply the doctrine of *res judicata* so as to deprive him of an actual opportunity to be heard.

The Court finds that plaintiff's characterization of the letter agreement—as an independent agreement between Colonial and himself in his personal, noncorporate, nonguarantor capacity—is belied by the text of the letter itself.[10] The letter

**10.** Were the court to accept plaintiff's unsupported assertion that the letter agreement was an independent agreement which he entered into on his own behalf in an individual, noncorporate, nonguarantor capacity, plaintiff would face another insurmountable problem. By characterizing the letter agreement as independent of the mortgage agreements and the guarantees, Sirinakis could escape the *res judicata* effect of the prior judgments. However, he would also cut himself off from virtually all of the damages which he claims.

As the complaint makes clear, most of the damage claimed by Sirinakis was actually damage suffered by the shipping companies. Paragraphs 10 and 13 of the complaint claim loss of earnings and profits by the vessels. Of course, it was the shipping companies and not Sirinakis who owned the vessels and thus the losses. Similarly, the allegation of ¶ 26 that defendant intended to "deprive Sirinakis of the use of the vessels and to force Sirinakis out of business" is actually a claim of damage to the shipping companies. Even where Sirinakis claims that Colonial's actions destroyed his business reputation and good will, it is clear that the ultimate damage suffered was to his businesses, i.e., the shipping companies. The law is clear that plaintiff, even as president and principal shareholder of the shipping companies, may not claim the companies' damages as his own. *See Terry v. Yancey,* 344 F.2d 789, 790 (4th Cir.1965) (sole stockholder of a corporation may not recover individually for corporation's expense of hiring surrogate because of stockholder's disability resulting from auto accident); *Erlich v. Glasner,* 418 F.2d 226, 227 (9th Cir.1969) (stockholder may not maintain a civil rights action under 42 U.S.C. § 1983 for damages suffered by the corporation); *Henry v. General Motors Corp.,* 236 F.Supp. 854, 856–57 (N.D.N.Y.), *aff'd,* 339 F.2d 887 (2d Cir.1964) (stockholder may not sue in individual capacity unless he suffers direct damage). "[W]here an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages." *Terry v. Yancey,* 344 F.2d at 790, *citing Schenley Distillers Corp. v. United States,* 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946).

The only claim plaintiff makes for personal damages is that Colonial's actions have made him personally liable for claims and litigations to which he is unable to respond. The only liability he mentions is his personal liability for payments to the crew's pension funds.

clearly shows that the shipping companies are either signatories to the agreement or third-party beneficiaries thereof. Plaintiff has presented no evidence which would contradict this finding, and in fact, plaintiff's own affidavit strongly supports a third-party beneficiary theory.

To begin with, the first sentence of the letter refers to the loan agreements between Colonial and the shipping companies and identifies Sirinakis as the owner or controlling person of the shipping companies.[11] This suggests right away that the subject matter of the letter was the loan agreements and that Colonial viewed Sirinakis as acting in his capacity as representative of the shipping companies.

More importantly, paragraphs 1, 3 and 4 of the letter impose conditions which only the shipping companies (or Sirinakis acting on their behalf) could carry out.[12] The fact that the letter consistently states that "you" (referring to Sirinakis) will perform the conditions, would seem beyond a doubt to indicate that the agreement was between Colonial and Sirinakis, acting as agent for the shipping companies.

Sirinakis makes two arguments against this interpretation of the letter agreement. First, he points out that he signed his own name to the letter and did not indicate that he was signing as representative of the shipping companies. It is questionable whether this fact would be determinative given the fact that the letter itself referred to Sirinakis as owner or controlling person of the shipping companies. Sirinakis also argues that if the letter were intended to be an agreement between Colonial and the ship owners modifying the loan agreement, the bank would have required specific documents amending the agreements and evidence of authorization from the companies to ensure that Sirinakis had the authority to bind the ship-owning companies. Affidavit of John S. Osborne, Jr., sworn to on January 26, 1983, ¶ 4.

Even assuming that the points raised by Sirinakis would preclude a finding that Sirinakis signed the letter agreement as agent for the shipping companies, they would have no relevance to the third-party beneficiary issue. Whether or not the shipping companies were signatories to the letter agreement, there can be no doubt that they were the intended beneficiaries. *See* Restatement (Second) of Contracts, §§ 302, 308 (the question is whether the parties intended to benefit a third person directly); *United States v. Ogden Technology Labor-*

Sirinakis claims that he is liable for these funds because Mr. Northcutt of Colonial Bank fraudulently induced him to order the Paralos to enter port at Malta. He argues that had he not been so induced, he would have "directed [the Paralos] to Pireaus, Greece, a jurisdiction where both crew and seamen pension funds, for which [he] is personally liable under Greek law, would have taken priority over Colonial's first mortgage." (Sirinakis Aff. at 11.) However, because Sirinakis was the guarantor of the shipping companies' obligations, he was liable for the difference between the debt and the amount realized upon sale at foreclosure of the Paralos. Had the pension fund obligations taken precedence over Colonial's first mortgage, it would have been paid and the remainder of the loan obligation for which Sirinakis is now personally responsible would be correspondingly increased. Any gain to Sirinakis from putting into Malto would have been offset by a corresponding increase to his liability under the guarantees. Therefore, Sirinakis suffered no actual damage due to Colonial's action. Although plaintiff was held personally liable on the guarantees, he does not and cannot (because of the preclusive effect of the English judgment) seek to recover those damages herein.

11. The first sentence of the letter reads in pertinent part:

> We refer to the loan agreements dated 17th February 1981 and 28th August 1981 made between the owning companies of the above vessels (all of which companies are owned or controlled by you) and ourselves . . .

12. Paragraph 1 provides that a sale of the Anemodea will be executed on or before March 12, 1982, subject to the bank's prior approval of purchaser and terms. Obviously, only Anemodea Shipping Company, the owner of the Anemodea, would be in a position to sell the vessel.

Paragraph 3 provides for a time charter of the Paralos approved by Colonial. Clearly, only Thalassarchis Shipping Company, the owner of the Paralos, would be able to time charter the vessel. Sirinakis would have no power to do so except on behalf of the company.

Paragraph 4 provides that the Paralos will be moved to Malta pending the time charter. Again, this is a commitment only Thalassarchis could undertake.

*atories, Inc.*, 406 F.Supp. 1090, 1092 (E.D. N.Y.1973). It was the shipping companies, and not Sirinakis, which were in default on their loan payments. Thus, it was the shipping companies which would have benefited in the first instance from Colonial's forbearance.[13] Sirinakis himself admits in his affidavit that "[d]uring the negotiations [on the letter agreement] I requested *on behalf of the ship-owning companies*, a moratorium on principal and interest payments in order to allow time for the shipping markets to rebound and to put the companies in a position to be able to repay the debt" (emphasis added). Sirinakis Aff. ¶ 12. From this and from the letter itself, it could not be clearer that the agreement was intended to directly benefit the shipping companies. Thus, although questions of intent are ordinarily inappropriate for resolution by summary judgment, we find that there is no triable issue here. We find as a matter of law that the shipping companies were either signatories (through Sirinakis acting as their authorized representative) to the letter agreement or third-party beneficiaries thereof.

If the shipping companies were in fact the signatories to the letter agreement, it is clear that any rights created by virtue of that agreement run to the companies and not to Sirinakis personally. In that case, Sirinakis would not be the real party in interest for the purposes of the claims herein, and they would have to be dismissed on that basis. *See* Rule 17(a), Fed.R.Civ.P. Therefore, we will assume, in a light most favorable to Sirinakis, that the shipping companies are the third-party beneficiaries of the letter agreement and that Sirinakis is the promisee of that agreement.

Assuming that the shipping companies were third-party beneficiaries of the letter agreement, there is no question that they could have raised the letter agreement as a defense to foreclosure. Yet they chose not to do so and final judgments were entered in favor of Colonial against the vessels. Under the doctrine of *The Mary*, 13 U.S. (9 Cranch) 126, 3 L.Ed. 678 (1815), the entire world is bound by these proceedings. Thus, if the ship owners were the plaintiffs herein, it is clear that they would be barred from reopening issues, *i.e.*, the validity of the foreclosures and the existence of a forbearance agreement which they had a full and fair opportunity to litigate in the earlier actions.[14] *See also Alpine Gulf, Inc. v. National Bank of Chicago, et al.*, 1981 A.M.C. 540; *Global Navigation Corp., et al. v. Colonial Bank, Heritage Ship Agency, Inc., et al.*, No. 82 Civ. 3659 (S.D.N.Y. Oct. 19, 1982).

It follows that Sirinakis is barred from reopening these issues as the promisee of the third-party beneficiary contract which he entered into for the benefit of the

13. Of course, Sirinakis, as guarantor, would have benefited secondarily from the bank's forbearance. However, Sirinakis insists that he did not enter into the agreement in his capacity as guarantor and that he does not bring this action in that capacity.

14. We do not suggest that the ship owners or Sirinakis could have asserted their tort claim in the prior proceedings. However, had they successfully asserted the defense that Colonial breached the mortgage agreement, as modified by the letter agreement, this would have established a record on which to base a subsequent damage action. As it is, plaintiff's tort claim is plainly inconsistent with the judgments obtained by Colonial in the prior proceedings and therefore is barred.

In order to establish a claim for intentional interference with his business relations, plaintiff would have to prove that the interference was improper. *Hecht v. Air Reduction Co.*, 41 Misc.2d 463, 245 N.Y.S.2d 935 (S.Ct. 1963); *Bunch v. Artec Int'l Corp.*, 559 F.Supp. 961 (S.D. N.Y.1983). A person who asserts in good faith a legally protected interest of his own and thereby interferes with another person's business relations, does not interfere improperly. Restatement Torts (Second) § 773. Thus, to succeed on his tort claim, plaintiff would have to prove that contrary to the findings necessary to the previous judgments, Colonial's seizure of and foreclosure on the vessels were improper. Accordingly, since we find the contract claim barred, we also find that an estoppel must be raised against the tort claim.

shipping companies.[15] It is well established that "[a] valid judgment against a third-party beneficiary precludes a later action on the obligation by the promisee." Restatement (Second) Judgments § 56(2) (1982).

Plaintiff attempts to argue that the doctrine of *The Mary* does not bar the claims. Plaintiff asserts that since he does not challenge the judicial arrest, foreclosure or sale of any vessel subject to a court's *in rem* jurisdiction *The Mary* is inapplicable. The Court acknowledges that few cases have explored the outer limits of the doctrine; logic, however, suggests that plaintiff's interpretation of *The Mary* is too narrow. As defendant argues:

> If plaintiff were held not barred by the *in rem* judgments from relitigating the issues raised in this action, *in rem* judgments regarding rights in vessels would lose their finality. Owners of vessels and others, such as Sirinakis, asserting rights contrary to those claimed by the vessel's mortgagee bank, could stand by while a court with *in rem* jurisdiction proceeded to judgment and then assert, in a subsequent *in personam* action, a claim that the mortgagee bank had breached a forbearance agreement.
>
> When a mortgagee bank forecloses its lien and obtains judgment, it is entitled to be secure in the knowledge that the mortgagor, and related parties such as Sirinakis, cannot later claim rights inconsistent with those adjudicated in the mortgage foreclosure. *See Alpine Gulf,* 1981 A.M.C. 540; *Global Navigation,* No. 82 Civ. 3659 (S.D.N.Y. Oct. 19, 1982).

Memorandum of Law in Support of Defendant's Motion to Dismiss at 7.

Moreover, even if plaintiff's claims were not barred by the *in rem* judgments, they would undoubtedly be barred by the *in personam* judgment obtained against Sirinakis in England. Sirinakis could have (assuming the *in rem* judgments are not *res judicata* on the issue) and should have asserted the letter agreement as a defense to Colonial's action on the guarantees. However, Sirinakis failed to appear and judgment was entered against him, conclusively establishing that the shipping companies were in default and that Colonial was entitled to recover against the shipping companies under the loan and mortgage agreements and against Sirinakis under the guarantees.[16] Plaintiff's present claims are in effect a collateral attack on that judgment which is not permitted under either English or New York law.[17]

15. Arguably, even absent his relationship with the shipping companies, Sirinakis would be bound by the findings in the *in rem* proceedings since under the doctrine of *The Mary,* these proceedings in admiralty are binding on the whole world. However, we would hesitate to apply *res judicata* to Sirinakis' claims on that theory alone since Sirinakis, having no individual ownership interest in the vessels, may not have had standing to raise any defense to foreclosure in the *in rem* proceedings. However, since plaintiff was a promisee of a contract for the benefit of the shipping companies, it is sufficient that the shipping companies had a full and fair opportunity to defend against foreclosure.

16. There is no question but that the English Court had personal jurisdiction over Sirinakis. Sirinakis agreed in the guarantees to litigate in London and had counsel appointed for the purpose of accepting service of process in London. *See* Elwen Aff., Exhs. 5, 9.

17. The parties have not briefed the issue of what law should apply in determining the preclusive effect of the English judgment on the tort action asserted, since the choice of law provision in the financing agreements applied English law to the contract then executed. *O'Rourke v. Eastern Airlines, Inc.,* 730 F.2d 842, 846–51 (2d Cir.1984). In such a situation the Court may apply the law of the forum state. *See Watts v. Swiss Bank Corporation,* 27 N.Y.2d 270, 276, 317 N.Y.S.2d 315, 319, 265 N.E.2d 739, 743 (1970). However, we note that British and New York rules of *res judicata* are not in conflict. Both British and New York law provide that "[a] party is precluded from relitigating matters determined adversely to him in a prior action." *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co., Ltd.,* 470 F.Supp. 610, 616 (S.D.N.Y. 1979). In addition, both grant the same force to judgments by default: "[a] party who has defaulted in a previous action is estopped from setting up a defense in the subsequent action which was necessarily decided in the previous judgment." *Id. See also Meinrath v. Singer Co.,* 87 F.R.D. 422, 431 (S.D.N.Y.1980) ("[A] party that failed to present relevant arguments or issues to the appropriate tribunal may not thereafter be relieved of its judgment on the ground

This Court finds that plaintiff's contract-based claim must be barred under both traditional *res judicata* principals and the doctrine of *The Mary.* The Court further finds that any tort-based claim which plaintiff might have stated must be dismissed because collateral estoppel bars plaintiff from re-litigating an essential element of that claim.

Accordingly, the Court grants defendant's motion to dismiss.

It Is So Ordered.

it failed to decide specific issues that could have

been presented.")