**RA GLOBAL SERVICES, INC. f/k/a Realamerica Co. and George E. Burch III, Plaintiffs,**

v.

**AVICENNA OVERSEAS CORP., Hüseyin Gün, Todd Peterson, and Nixon Peabody LLP, Defendants.**

No. 10 Civ. 2701 (NRB).

United States District Court,
S.D. New York.

Feb. 1, 2012.

Brian L. Gardner, Esq., Sullivan Gardner, P.C, New York, NY, for Plaintiffs.

Steven M. Lucks, Esq., Fishkin Lucks LLP, Newark, NJ, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiffs RA Global Services, Inc. ("RA Global") and George E. Burch III bring this lawsuit alleging breach of contract, breach of fiduciary duty, fraudulent inducement, and conspiracy. Presently before us is the motion to dismiss of defendants Avicenna Overseas Corp. ("Avicenna") and Hüseyin Gün (together, "defendants") on the grounds of res judicata.

For the reasons set forth herein, defendants' motion is granted.

## BACKGROUND[1]

### I. Factual Background

RA Global provides global oilfield services and has operations on three continents. Burch is an executive officer of RA Global and chairman of its Board of Directors. In 2005, RA Global contracted with CapitalinQ Limited ("CapitalinQ") to assist with RA Global's need for a capital infusion. CapitalinQ introduced RA Global to, among other investors, Gün and Avicenna, which Gün controlled. Plaintiffs allege that CapitalinQ, while purporting to be providing RA Global with unbiased advice, had undisclosed connections to Avicenna and that both Avicenna and CapitalinQ were acting at the direction of Gün.

RA Global entered into loan agreements with Avicenna on July 26, 2005 and June 28, 2006, in the amounts of $600,000 and $150,000 respectively, secured by RA Global's promissory notes and Burch's personal guarantees. According to the FAC, the structure of the loan agreements gave Avicenna the right to take possession of one of RA Global's assets—the recently acquired Intergulf Oilfield and Marine Services, LLC ("IGOMS")—and control of RA Global itself if the latter defaulted. RA Global has elsewhere alleged that all of the parties to these transactions were "fully aware that there was no possibility that [RA Global] could repay such loans in the ordinary course of business" and would be dependent on a new listing of its shares on the London Stock Exchange to supply the funds for repayment. (Decl. of Steven M. Lucks in Supp. of Mot. to Dismiss, Ex. E, Witness Statement of Davis Martin ("Martin Witness Statement") ¶ 26.)

As the loans came due in 2006, RA Global could not meet its obligations and executed a memorandum of understanding with several creditors, including Avicenna. (*Id.*, Ex. B (the "MOU").) The MOU functionally extended the maturity date of the loan agreements to July 31, 2007, as well as, among other things, gave Avicenna the right to place an individual on RA Global's Board of Directors and required RA Global to hire two executives, who also became board members, chosen in part by Gün. Plaintiffs allege that these individuals—Jonathan Apps and Abid Hamid—took direction from Gün, frequently to the benefit

---

1. These facts are derived from the First Amended Complaint (the "FAC"), the allegations of which we accept as true for the purposes of the motion to dismiss, as well as the declarations submitted in connection with this motion where necessary. We also consider the decision of the English High Court of Justice, Queen's Bench Division, in *Avicen-na Overseas Corp. v. RA Global Serve. Inc.*, [2010] No. 2009 Folio 1575 (EWHC QBD) (the "Decision"), as well as the pleadings and other documents filed in that action, of which we take judicial notice. *See AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir.2003).

of Avicenna but to the detriment of RA Global. According to the FAC, their conduct in running up needless expenses and failing to collect receivables made it difficult for RA Global to repay the loans, and it breached the terms of the MOU when the new maturity date arrived.

## II. Procedural History

In August 2007, plaintiffs sued a number of parties—including defendants here, Apps, Hamid, and CapitalinQ—in Texas state court (though the action was later removed to the Northern District of Texas), seeking to recover for the alleged injuries outlined above. For reasons that are disputed but irrelevant to this proceeding, plaintiffs dropped the claims against Avicenna and Gün. They eventually obtained a default judgment against, Apps, Hamid, CapitalinQ, and others.

By December 2008, plaintiffs had still not paid the moneys owed to Avicenna under the MOU, and Avicenna brought suit in New York state court seeking recovery. RA Global, however, moved to dismiss the action on the grounds that, inter alia, the MOU provided for the exclusive jurisdiction of the courts of England to hear any suit arising out of that memorandum, (MOU ¶ 14.2), and that motion was granted. *See Avicenna Overseas Corp. v. Realamerica Co.*, No. 116092/08, 2009 N.Y. Misc. LEXIS 6061 (N.Y.Sup.Ct. Sept. 1, 2009).

Avicenna subsequently sued RA Global in London for approximately $1 million owed on the loans (the "U.K. Action"). RA Global contested its liability in that suit on a number of grounds. Three of those defenses—duress, the argument that "the loans do not record the true agreement between the parties," and setoff from Avicenna's having acquired shares in IGOMS—were deemed "quite hopeless" by the English High Court and were aban-

doned. Decision ¶¶ 16–18. The court gave more consideration to two other defenses: first, that Avicenna conspired to breach an implied term of the MOU by installing Apps and Hamid in the company and failing to supervise their management of the company, *see id.* ¶¶ 19–21; and, second, the so-called "Vienna Agreement," under which Avicenna allegedly agreed to forego repayment of the loans if Avicenna and Gün were released from the proceedings that had been initiated in Texas, *see id.* ¶ 22. The English High Court rejected these two remaining defenses as having "no prospect" of success and granted summary judgment in favor Avicenna on March 30, 2010.

Following the Decision, RA Global lodged a notice of appeal with the Court of Appeal, Civil Division. There, Lord Justice Potter noted that "[t]he defence advanced by [RA Global before the English High Court] was ... essentially a matter of counterclaim which they were/are not precluded from pursuing." (Decl. of John Frank Rosenheim in Supp. of Mot. to Dismiss ("Rosenheim Decl."), Ex. C.) Thus, RA Global was explicitly permitted to pursue an appeal and the defenses/counterclaims it had asserted.

Despite that explicit permission, RA Global abandoned its appeal and instead decided to pursue this case, which had been filed on March 26, 2010, a mere five days before the Decision was rendered, a fact of which the English court was made aware on the day of the hearing. *See, e.g.*, Decision ¶ 6 ("The first submission put forward on behalf of the defendant today was that this application should be adjourned.... Reliance is placed on a complaint recently filed in New York by the defendant in which, remarkably, it seeks a declaration, amongst other things, about at least one aspect of the MOU."). This case, like the English Action, stems from the

signing of the MOU and the surrounding transactions. Specifically, plaintiffs seek to recover for: defendants' breach of contractual obligations, including the obligation of good faith and fair dealing (Count I); defendants' breach of fiduciary duty (Count II); being fraudulently induced to enter into the MOU by defendants' failing to disclose the relationships among the various actors and that they were engaged in a loan-to-own scheme, as well as related affirmative misrepresentations (Count III); defendants' conspiracy to commit the alleged actions (Count V); and unjust enrichment from defendants' course of conduct (Count VI).

Defendants have moved to dismiss the claims against them as being barred by res judicata because they were, or could have been, raised and fully litigated in the U.K. Action.

## DISCUSSION

### I. The Law of Res Judicata in New York State

■ Under New York law,[2] res judicata operates to bar "successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction,[3] and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *New York v. Applied Card Sys., Inc.,* 11 N.Y.3d 105, 122, 863 N.Y.S.2d 615, 894 N.E.2d 1 (2008) (internal quotation marks and citation omitted). A claim is part of the "same transaction" as another claim if they stem from the "same factual grouping[,] even if the claims involve materially different elements of proof, and even if the claims would call for different measures of liability or different kinds of relief." *Fifty CPW Tenants Corp. v. Epstein,* 16 A.D.3d 292, 792 N.Y.S.2d 58, 59 (1st Dep't 2005) (internal quotation marks and citations omitted).

■ A defense need not have actually been raised in the earlier proceeding to be subject to res judicata, so long as it could have been raised. *See, e.g., CIBC Mellon Trust Co. v. HSBC Guyerzeller Bank AG,* 56 A.D.3d 307, 867 N.Y.S.2d 74, 76 (1st Dep't 2008) (barring defendants' unclean hands defense even though not previously litigated because they were parties to the prior English proceeding). Plaintiff, however, argues that claim preclusion is treated differently, and that claims that were not but could have been interposed as counterclaims in a prior action are not

---

2. When determining the preclusive effect of a judgment from a foreign country, rather than applying the law of that country, "a federal court should normally apply either federal or state law, depending on the nature of the claim." *Alfadda v. Fenn,* 966 F.Supp. 1317, 1329 (S.D.N.Y.1997). Because plaintiffs bring claims only under state law and this Court's jurisdiction rests solely on diversity grounds, New York's res judicata doctrine is appropriately employed. *See Italverde Trading, Inc. v. Four Bills of Lading,* No. 04 Civ. 2793, 2009 WL 499502, at *6, 2009 U.S. Dist. LEXIS 15580, at *20 (E.D.N.Y. Feb. 27, 2009) (citing *Alesayi Beverage Corp. v. Can. Dry Corp.,* 947 F.Supp. 658, 664 (S.D.N.Y.1996)).

Nevertheless, New York law does not "give more conclusive effect to a foreign judgment than it would be accorded by the courts of the jurisdiction which rendered it." *Schoenbrod v. Siegler,* 20 N.Y.2d 403, 409, 283 N.Y.S.2d 881, 230 N.E.2d 638 (1967). It thus incorporates to a limited extent the foreign jurisdiction's law. Our review of the relevant submission and prior case law does not, however, suggest that there are meaningful differences between res judicata as applied in New York and in Britain. *See, e.g., Sirinakis v. Colonial Bank,* 600 F.Supp. 946, 956 n. 17 (S.D.N.Y. 1984) ("... British and New York rules of res judicata are not in conflict.").

3. It is uncontested that the Decision was levied by a court of competent jurisdiction. *See CIBC Mellon Trust Co. v. Mora Hotel Corp.,* 100 N.Y.2d 215, 222, 762 N.Y.S.2d 5, 792 N.E.2d 155 (2003).

necessarily barred. *See Lukowsky v. Shalit,* 110 A.D.2d 563, 487 N.Y.S.2d 7S1, 784 (1st Dep't 1985) ("[T]he fact that a plaintiff may have asserted the subject matter of his present claim as a defense to a former action does not foreclose the maintenance of his present action on the ground of res judicata.").

The reasoning for this treatment of claim preclusion, however, is outlined by the court in *Pace v. Perk,* 81 A.D.2d 444, 440 N.Y.S.2d 710, 719–20 (2d Dep't 1981). That court noted that the failure to interpose a counterclaim does not prevent subsequent maintenance of an action based on that claim because "[i]n New York all counterclaims are permissive." *Id.* (citing N.Y.C.P.L.R. § 3019(a)); *see also Classic Autos., Inc. v. Oxford Res., Corp.,* 204 A.D.2d 209, 612 N.Y.S.2d 32, 33 (1st Dep't 1994) ("New York's permissive counterclaim rule allows counterclaims to be raised through separate litigation even if interposed as a defense in prior litigation ...."); *Batavia Kill Watershed Dist. v. Charles O. Desch, Inc.,* 83 A.D.2d 97, 444 N.Y.S.2d 958, 960 (3d Dep't 1981) (permitting an action despite counterclaim not having been raised in prior proceeding because "there is no requirement of compulsory pleading of counterclaims in this State").

■ However, this reasoning does not apply when the forum in which the prior litigation occurred was a compulsory counterclaim jurisdiction. Rather, in such circumstances, notions of judicial economy and fairness require that a party be precluded from bringing all claims that it earlier had the opportunity—exercised or not—to assert as counterclaims.[4] *Cf. Gargiulo v. Oppenheim,* 63 N.Y.2d 843, 845, 482 N.Y.S.2d 256, 472 N.E.2d 32 (1984) (assuming without deciding that a compulsory counterclaim rule would extend claim preclusion "to bar the later assertion in the present ... action of a contention which could have been raised by way of a counterclaim in the answer in the prior ... action between the same parties"); *cf. also Sung Hwan Co. v. Rite Aid Corp.,* 7 N.Y.3d 78, 82, 817 N.Y.S.2d 600, 850 N.E.2d 647 (2006) (recognizing the importance of comity with respect to foreign judgments, unless the result is "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense" (internal quotation marks omitted)).

## II. The Law of Counterclaims in England

■ The sole submission before the Court addressing the issue indicates that,

---

**4.** Citing *Stroock & Stroock & Lavan, LLP v. KSW, Inc.,* No. 110886/00, 2001 WL 1682878, 2001 N.Y. Misc. LEXIS 756 (N.Y.Sup.Ct. Oct. 24, 2001), plaintiffs insist that one New York State court has held differently. The defendants in *Stroock* had sued the plaintiff in California state court—a compulsory counterclaim jurisdiction—for malpractice, and, while that action was pending, the plaintiff brought suit in New York state court for recovery of legal fees from the transaction that gave rise to the malpractice claim. *See id.* at *1, 2001 N.Y. Misc. LEXIS 756 at *3–5. While the court noted that "the fact that Stroock's legal fee claim appears to constitute a compulsory counterclaim in California ... has no bearing on Stroock's right to commence a separate action for the same relief in

New York, which, in any event, has a permissive counterclaim rule," *id.* at *1, 2001 N.Y. Misc. LEXIS 756 at *9 (internal citations omitted), it was there discussing the California suit's relevance to forum non conveniens, not whether New York's permissive rule would override California's compulsory rule. Indeed, the court went on to stay the New York state action, noting the policies of "avoid[ing] the risk of inconsistent decisions and [multi-jurisdiction] evaluation of the same issues" before concluding that "the claims asserted herein can, and indeed must, be asserted as a counterclaim in [the California] action." *Id.* at *1, 2001 N.Y. Misc. LEXIS 756 at *10–11. Our decision is consonant with the principles at operation in that opinion.

in England, a failure to raise counter claims is an abuse of process which will preclude later litigation of those issues if the counterclaims should have been raised in the earlier proceeding.[5] (Rosenheim Decl. ¶ 4 ("In English law it is an abuse to raise issues that should have been litigated in earlier proceedings. When a matter is subject to litigation, the parties should raise their whole case so the court may finally decide it.").) *See also Henderson v. Henderson*, (1843) 67 Eng. Rep. 313 (Ct. of Chancery) ("[w]here a given matter becomes the subject of litigation in, and of adjudication by, a Court of competent jurisdiction, the Court requires the parties to that litigation to bring forward their whole case, and will not ... permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in contest ...."); *Johnson v. Gore Wood & Co*, [2002] 2 A.C. 1 (H.L.) ("The bringing of a claim or the raising of a defence in later proceedings may, without more, amount to abuse if the court is satisfied ... that the claim or defence should have been raised in the earlier proceedings if it was to be raised at all.").

Claims that should have been brought in a prior proceeding in England are therefore equivalent to claims not brought in a domestic compulsory counterclaim jurisdiction. Thus any such claims would be barred in a later proceeding under New York state res judicata law.

### III. Plaintiffs' Claims Against Avicenna Are Barred by Res Judicata

The claims asserted here derive from the same transactions that were the subject of the U.K. Action and thus could have been brought in connection with that proceeding. The U.K. Action dealt with RA Global's liability to Avicenna for defaulting on the MOU and the claims at issue here fundamentally revolve around RA Global's agreeing to the MOU and the consequences thereof.

Moreover, some of the defenses raised in the U.K. Action are nearly identical to certain of the claims raised here, including conspiracy and breach of duty. The other defenses involved predicates that are identical in substance to the allegations against Avicenna here. For instance, the Witness Statement of Davis Martin, offered on behalf of RA Global in the U.K. Action, details RA Global's introduction to Avicenna through CapitalinQ, the agreement of the 2005 and 2006 loans and the MOU, the provisions of the MOU that enabled Avicenna to acquire an interest in IGOMS and required RA Global to take on Apps and Hamid, and the actions of Apps and Hamid that damaged RA Global's business. (Martin Witness Statement ¶¶ 16–18, 35–37, 40.) The statement even alleges that Gün "was personally directing Mr Hamid and Mr Apps in their day to day activities ... [and] was a central figure in the plan to bring about the failure of [RA Global]." (*Id.* ¶ 57.) It further implies that Avicen-

---

5. Plaintiffs contended at oral argument that other courts in this district have held that England, like New York, is a permissive counterclaim jurisdiction. *See Sirinakis*, 600 F.Supp. at 956 n. 17; *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*, 470 F.Supp. 610, 616 (S.D.N.Y.1979). Plaintiffs misread these cases. The court in *Fairchild* found that "British law and New York law are not in conflict" with respect to the proposition that "a party is precluded from relitigating matters determined adversely to him in a prior action," 470 F.Supp. at 616, and the *Sirinakis* court made the same finding, as well as finding that the two jurisdictions "grant the same force to judgments by default," 600 F.Supp. at 956 n. 17. These decisions recognized that, as noted previously, British and New York treatment of judgments for res judicata purposes are similar, but they made no finding regarding England's stance on counterclaims.

na committed fraud in the course of its dealings with RA Global, as is alleged here, though it specifically disclaims actually advancing that argument. (*Id.* ¶ 58 ("I have avoided using words such as 'fraud' in this statement. . . . I can and do say that, based on the same background and facts, the U.S. Federal Court found that fraud had been committed in this matter by members of the concert party.").)

Thus, RA Global raised the issues it now brings before this Court to a significant extent in the U.K. Action, and that court found those arguments to be without merit. Even though RA Global did not bring actual claims in the earlier proceeding, there is no doubt that it could have, (Rosenheim Decl., Ex. C ("The defence advanced by [RA Global] was . . . essentially a matter of counterclaim which they were/are not precluded from pursuing.")), and that it should have.

Plaintiffs offer only a single reason why RA Global's failure to bring counterclaims against Avicenna in the U.K. Action was not an abuse of process:[6] pursuit of such counterclaims would have required it to post an undertaking of approximately £300,000. While there is some authority to suggest that bonds of that sort may be sufficiently onerous to justify the failure to bring a claim, *cf. Texaco, Inc. v. Pennzoil Co.*, 626 F.Supp. 250 (S.D.N.Y.1986) (enjoining enforcement of an out-of-state judgment because defendant could not afford to post the supersedeas bond required to stay the judgment pending an appeal), *aff'd in part*, 784 F.2d 1133 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987),[7] we need not decide whether RA Global may avail itself of that refuge because it consented to the English courts' exclusive jurisdiction and the procedural burdens attendant thereto, including any required undertakings for asserting claims. (MOU ¶ 14.2 ("[E]ach party irrevocably submits to the jurisdiction of the courts of England.").) Unlike a situation where a party has unwittingly been hauled into a court against its will and there finds procedural hurdles that preclude it from fully litigating a case, RA Global knowingly agreed to let the courts of England handle its disputes arising from the MOU and related transac-

---

**6.** Plaintiffs also argue somewhat lamely that defendants have waived their ability to raise a res judicata defense because they have "acquiesce[d]" to this suit by not objecting to the simultaneous proceedings here and in Britain. *Kendall v. Avon Prods., Inc.*, 711 F.Supp. 1178, 1182 (S.D.K.Y.1989) (citing *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 199–200 (2d Dep't 1980)). The decision in *Kendall*, however, involved "circumstances [that] do not fall neatly into 'previous action' and 'subsequent action' categories" because the two actions "were initiated by plaintiff nearly simultaneously." *Id.* at 1181–82. Likewise, in *Brown*, the two relevant actions were concurrently pending for approximately six months. *See* 432 N.Y.S.2d at 191–92. Here, however, the Decision was rendered in the U.K. Action just four days after plaintiffs filed this action and months before defendants were served. Defendants, moreover, asserted their res judicata defense prior to even answering the complaint. It is disingenuous to suggest that plaintiffs have been prejudiced by any imagined delay in defendants' raising the res judicata objection or that defendants have in any way consented to relitigating these claims.

**7.** Plaintiffs' citation to *Computer Associates International, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir.1997), to support the proposition that barriers that inhibited a party from bringing counterclaims in an earlier suit will justify permitting claims in a later suit that would otherwise be barred by res judicata is unpersuasive. *Computer Associates* dealt with a situation where the earlier court could not assert personal jurisdiction over a principal party to the later suit. *See id.* That sort of jurisdictional preclusion is different in kind than the functional preclusion plaintiffs assert existed here.

tions. Indeed, it even argued for dismissal of the action first brought by Avicenna in New York on the grounds that England was the proper forum for resolution. It cannot now complain that it chose poorly in selecting that jurisdiction.[8]

RA Global was thus obliged to assert its counterclaims in the U.K. Action or be forever precluded from raising them. The addition of Burch as a plaintiff does not alter this result because, as an executive of the company, he is in privity with RA Global and also subject to res judicata. *See Prudential Lines, Inc. v. Firemen's Ins. Co.*, 91 A.D.2d 1, 457 N.Y.S.2d 272, 275 n. * (1st Dep't 1982) ("The doctrine of res judicata applies to parties and their privies and while [plaintiff] was not formally named as a party in the [prior] suit, he [as president] is in privity with his corporation." (citation omitted)); *see also Bankers Trust Co. v. Javeri*, 105 A.D.2d 638, 481 N.Y.S.2d 362, 364 (1st Dep't 1984) ("Although not nominally a party to the earlier actions, defendant was in privity with the corporate defendant in those actions within the meaning of the res judicata rules because defendant was the president of the corporation and actively

participated in the defense of those actions ....").

The claims against Avicenna are dismissed with prejudice.

## IV. Plaintiffs' Claims Against Gün Are Not Barred by Res Judicata

Gün's absence from the U.K. Action does not necessarily-mean that he cannot avail himself of the res judicata defense. So long as his "liability is altogether dependent upon the culpability of one exonerated in a prior suit," the claims against Gün will also be barred. *Marinelli Assocs. v. Helmsley–Noyes Co.*, 265 A.D.2d 1, 705 N.Y.S.2d 571, 576 (1st Dep't 2000) (internal quotation marks and alteration omitted); *see also Edward Joy Co. v. Hudacs*, 199 A.D.2d 858, 606 N.Y.S.2d 74, 76 (3d Dep't 1993).

The vast majority of the relevant allegations in the FAC refer to Avicenna and Gün simultaneously—as the "Avicenna Defendants"—because Gün was acting on behalf of Avicenna.[9] This denomination aside, the allegations refer only to actions Gün took to exercise Avicenna's rights or otherwise benefit the company.[10] Allega-

8. Moreover, defendants' contention that the undertaking which would have been required of RA Global was closer to £5000 goes uncontested. We need not decide the matter, but it is unlikely that a bond of that size would have truly precluded RA Global from asserting its counterclaims in the U.K. Action.

9. The FAC does, in a few instances, refer to Gün apart from Avicenna. Nevertheless, those allegations still pertain to actions Gün took as Avicenna's representative. For the most part, they flow from the MOU, to which Avicenna—not Gün—was a party. (*See, e.g.*, FAC ¶¶ 34 (Gün and another individual picked Apps and Hamid as RA Global's new executives), 40 (Gün and another individual directed the actions of Hamid and Apps, and Gün by himself directed the actions of defendant Todd Peterson), 52 (Gün and another individual instructed Hamid and Apps to

withhold material information from RA Global's Board of Directors).)

10. There is a single allegation in the FAC that suggests that Gün may have been acting other than in his capacity as principal of Avicenna. It alleges that Gün was directing CapitalinQ when it introduced RA Global to Avicenna. (FAC ¶ 22.) Yet the FAC also alleges that "CapitalinQ and the Avicenna Defendants were acting together as partners with regard to providing the funding to [RA Global]," (*id.*), implying that any direction Gün may have given to CapitalinQ was provided in his role as Avicenna's principal. Moreover, the allegation is not actionable. The FAC does not allege any negative consequences that can be said to have arisen from Gün's undisclosed connection to CapitalinQ. Thus, the allegation of Gün's association with CapitalinQ does not, by itself, state a claim against Gün.

tions pertaining to Gün acting in his capacity as principal of Avicenna are functionally allegations against Avicenna—which, as a corporate entity, can act only through its principals. Were these allegations to state a claim against Gün, the claim would be wholly derivative of the claims against Avicenna. Because plaintiffs are barred from pursuing claims against Avicenna, they are likewise barred from pursuing these claims against Gün.

## CONCLUSION

For the foregoing reasons, the motion (docket no. 39) is granted.